[No. 13705.    Department Two.    July 16, 1917.]

# N. R. EYERS, *Respondent*, v. BURBANK COMPANY, *Appellant*.[1]

APPEAL—REVIEW—HARMLESS ERROR.    Error in refusing to strike
certain allegations from the complaint is harmless where the court
refused to permit any evidence thereon to go to the jury.

FRAUD—ACTION FOR DAMAGES—COMPLAINT—SUFFICIENCY.    A com-
plaint for false representations, alleging generally that the state-
ments were false, is not demurrable for failing to state facts spe-
cifically showing wherein they were false, the remedy being by mo-
tion to make more definite and certain.

FRAUD—ACTIONS—MEASURE OF DAMAGES.    In an action for fraud
inducing a sale where the vendee never had title and was dispos-
sessed for breach of condition, the measure of damages is not the
difference between the value of the land and what it would have
been if as represented, but he may recover his expenses and outlay
in going upon and improving the land.

FRAUD—ACTION FOR DAMAGES—COMPLAINT—FACTS OR CONCLUSIONS.
In an action for fraud, a complaint alleging false representations as
to the value of the property sold need not allege such circumstances
accompanying the representations as would make them statements of
fact, where it is alleged that the representations related to material
facts, that they were false and relied upon, and that plaintiff was
damaged thereby.

SAME—RELIANCE UPON REPRESENTATIONS—COMPLAINT—SUFFICIEN-
CY.    In an action for fraud, a complaint sufficiently alleges, as against
demurrer, the plaintiff's right to rely upon representations as to
land at B. sold to him, where it states that he had no knowledge of
the facts existing at B. and could not determine the truth or falsity
of the representations until he had visited B. and not until the
latter part of a growing season, although it does not show by par-
ticular facts that he had a right to rely thereon or was excused
from investigation.

APPEAL—REVIEW—HARMLESS ERROR.    Error cannot be predicated
upon the opening statement of counsel in rehearsing incompetent
facts he expected to prove, where the jury were instructed that the
same was subject to the further action of the court in permitting
him to introduce testimony and there was no showing that appel-
lant was prejudiced.

FRAUD—ACTION FOR DAMAGES—EVIDENCE—ADMISSIBILITY.    In an
action for fraud in inducing plaintiff to purchase land, evidence is

[1]Reported in 166 Pac. 656.

admissible of the representations concerning the land and the profits to be made therefrom, made to the plaintiff in a distant state by a soliciting agent, where, though to some extent immaterial, they all went to the matter of inducement leading up to plaintiff's conviction that statements made by the defendant after he came to see the land were true.

SAME. In such a case, it is immaterial whether the soliciting agent was an authorized agent, where the defendant afterwards made the same representations in such agent's presence.

SAME. In such a case, testimony of similar representations made to other witnesses in the same state by the soliciting agent, is admissible as corroborative, to some extent, as to plaintiff's reliance thereon.

SAME—RELIANCE UPON REPRESENTATIONS—MAKING INVESTIGATION. A purchaser may rely upon representations that land was well seeded to alfalfa and would produce seven to nine tons per acre the next season and was worth $300 per acre, notwithstanding he visited the land and made an investigation, where it appears that he knew nothing about farming by irrigation, could not tell whether it was properly prepared for cultivation or well seeded and did not discover until next season that it was not properly prepared or seeded and would not grow a good crop of alfalfa, and was not worth to exceed $100 per acre.

APPEAL—REVIEW—HARMLESS ERROR. Error in refusing to allow cross-examination of an adverse party as to a contract in issue is not ground for reversal where the contract was proved and subsequently admitted in evidence and the appellant was not prejudiced.

SET-OFF AND COUNTERCLAIM — SUBJECT-MATTER — DAMAGES FOR FRAUD. In an action for fraud in inducing a purchase of property, in which plaintiff was allowed recovery for expenses for permanent improvements made by him upon the land, which reverted to defendant, promissory notes indorsed by defendant, given for the performance of labor in the improvement of the property and to prevent liens attaching, are not proper subjects of counterclaim, where it was shown that they were not included in the improvements for which plaintiff was allowed damages.

FRAUD—ACTION FOR DAMAGES—GOOD FAITH—EVIDENCE—ADMISSIBILITY. In an action for fraud in inducing a purchase of land, it is not prejudicial error to exclude testimony referring to defendant's good faith in making representations in a pamphlet, where the statements therein show for themselves the purpose for which they were written and defendant testified very fully as to his purposes, sources of information, and good faith.

Fraud—Action for Damages—Representations by Agent—Evidence—Admissibility. In an action for fraud in inducing a purchase of land, representations made by a broker working upon a commission basis are admissible, where his agency for the defendant was established circumstantially and an officer of the defendant made the same representations in the agent's presence when they and the plaintiff visited the land together.

Appeal—Review—Harmless Error. Prejudicial error cannot be predicated upon the admission of evidence to which no particular weight was attached and which does not appear to have prejudiced appellant in any way.

Appeal from a judgment of the superior court for Franklin county, Linn, J., entered May 9, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action to recover damages for fraudulent representations. Affirmed.

*Gerard Ryzek* and *A. J. Elrod,* for appellant.

*Chas. W. Johnson,* for respondent.

Holcomb, J.—Respondent's second amended complaint, as it stood after a motion had been passed upon to strike various allegations in his preceding amended complaint, alleged, in substance, as follows:

(1) That, prior to January 1, 1915, the Burbank Company, a corporation of the state of Washington, employed representatives in the state of Wisconsin for the purpose of securing purchasers for lands situated in Walla Walla county, Washington.

(2) That, for the purpose of inducing respondent to enter into a contract for the purchase of lands, appellant *represented* to respondent that it had in growing alfalfa twenty acres of land, described therein, which was producing from seven to nine tons of alfalfa per acre, which land was under irrigation; that the Burbank Company had employment; that it had a herd of twenty dairy cattle; that all of those representations were made by the company's agents both in Wisconsin and in the state of Washington; that respondent did not have any knowledge of the facts existing at

Burbank, and had no knowledge as to appellant's representations about facts hereinbefore stated, and could not determine the truth or falsity of the statements until respondent visited Burbank, and then not until the latter part of a growing season had expired; that respondent is, by occupation, a common laborer; that he was induced to invest under the appellant's representations, and that he was unversed in conditions existing at Burbank under the Burbank project; that he had no knowledge or information as to conditions nor as to the truth or falsity of the statements made by the appellant nor as to the land controlled by appellant.

(3) That the company further represented that the land described was of the reasonable and just value of $6,000; that in truth and in fact the land was of the value of approximately $2,000; that the respondent had no knowledge or information upon which to determine the truth or falsity of the statements of the defendant.

(4) That all of the representations so made by the appellant to the respondent were false, fraudulent, and the appellant had no reason to believe them true, and they were made for the purpose of damaging the respondent by inducing him to part with his money and savings, and for the purpose of further inducing him to sign a certain written agreement for the purchase of the described premises, which contract provides for the payment of $6,000, with interest at the rate of six per cent per annum until paid, and for the further sum of $70 per annum maintenance fee.

(5) That, relying upon appellant's representations, respondent moved from the state of Wisconsin to the tract at Burbank, and executed the contract as hereinbefore stated.

(6) That the respondent relied upon the representations made by appellant, which representations were false, fraudulent, and made for the purpose of defrauding respondent, and respondent, by reason of appellant's false and fraudulent representations, has been damaged in the full and just sums specifically itemized as follows: $600 consideration for exe-

cution of the contract; $250 expended in locating himself, his wife, and five children upon the land; $500 personal labor in improving the premises; $200 in labor performed by his family, principally his wife; $500 loss of time during respondent's occupancy of the land (this item was withdrawn during the trial); $700 expended in buildings and permanent improvements upon the land described; and $490.90 expended in permanent improvements and buildings upon the land, due the White River Lumber Company for which that company has taken judgment against respondent and for which respondent is liable (this item was corrected during the trial to the sum of $453.85); or a total demand (after withdrawal and corrections) of $2,703.85, for which sum respondent demanded judgment.

After issue joined and a trial to the court and jury, the jury returned a general verdict for $1,669.95 in favor of respondent, and answered interrogatories showing their findings to be based upon the following items within respondent's demands for judgment, as follows: As consideration for the execution of the contract under respondent's first item, $75; as expenses for locating himself and wife and children upon the land under the second item, $200; for personal labor of respondent in improvements upon the premises under the third item of damage, $250; for labor performed by the family of respondent under the fourth item, $25; for expenditures in building and permanent improvements upon the land under the fifth item, $665; and under the sixth item, $453.85.

Appellant demurred to the second amended complaint, especially demurring to paragraph 3 thereof, for the reason that it did not state facts sufficient to constitute a cause of action, and especially demurring to paragraph six and to each and every allegation of damage separately alleged for the reason that the same did not state facts sufficient to constitute a cause of action, and generally to the entire amended complaint for the reason that the same did not state facts sufficient to constitute a cause of action.

The refusal of the court to strike the allegations contained in the complaint with reference to the fact that appellant had a herd of twenty dairy cattle and that it had employment, constitutes appellant's first ground of error. This claim is immaterial for the reason that the court refused to permit any testimony to go to the jury in support of those allegations, considering them allegations of merely promissory representations; and although the ruling of the court is criticised by respondent, he did not reserve error thereon. Those allegations were not material and should have been stricken, even though proof of such representations might have been introduced as promissory representations in support of the principal inducements alleged to have been held out by appellant to the respondent; but as bases of recovery, they have no standing and the court did not permit them to have.

The overruling of the demurrer to the second amended complaint constitutes appellant's second assignment of error. In support of this assignment, appellant strenuously urges that the allegations of the complaint were not sufficient, in that the complaint did not allege wherein the representations which were alleged to be false were false in fact, but stated only general conclusions that they were false; that the allegations of damage were not based upon the proper measure of damage. As to the first element of this contention, it is true that the allegations of falsity of the representations are general and there are no facts stated specifically as to wherein the representations were false. But the complaint alleges that the representations were all false, and that they were made without reason to believe that they were true and for the purpose of inducing the respondent to act upon them, and that he did so act to his damage.

While the complaint is somewhat deficient, it is not wholly defective. Where the allegations of a pleading state mere general conclusions or ultimate facts, the proper method of attacking such general allegations is to move for them to be

made more definite and certain instead of demurring generally to them. This was not done, and the appellant cannot now complain that the specific facts were not set forth. *Mills v. Rice*, 3. Neb. 76; *Morse v. Gilman*, 16 Wis.* 504; *Fitch v. Applegate*, 24 Wash. 25, 64 Pac. 147; Pomeroy, Code Remedies, § 443 and note.

In support of the second phase, as to the measure of damages alleged in the complaint being insufficiently and improperly pleaded, appellant cites much law to the effect that, in an action for deceit and fraud, the vendee has an election of remedies; that he may bring his action for a rescission of the contract or he may bring an action for damages for the fraudulent inducement, but that he cannot do both; that he has here elected to bring an action for damages for the fraudulent inducement, and that in so doing he waived his action for a rescission, and that the measure of damages for fraud and deceit is the difference between the value of the property at the time of the sale and what its value would have been if it had been as represented, citing many cases.

That is the true rule where the vendee retains possession and title of the property, and no better discussion of that rule has been made than can be found in *Tacoma v. Tacoma Light & Water Co.*, 17 Wash. 458, 50 Pac. 55, and *West v. Carter*, 54 Wash. 236, 103 Pac. 21. See, also, *Wilson v. New United States Cattle-Ranch Co.*, 73 Fed. 994; *Bunck v. McAulay*, 84 Wash. 473, 147 Pac. 33; 20 Cyc. 132; 14 Am. & Eng. Ency. Law (2d ed.), 182; Bigelow, Fraud, 627.

But these principles do not apply to the case under consideration. While it is not alleged in the complaint, it is shown by evidence introduced during the trial that appellant, about July 11, 1915, terminated the contract, presumably for an alleged breach of some condition subsequent, having previously taken possession of the land during June, 1915, about six months after the contract with respondent was made. This was later effected by the physical dispossession of the respondent by the sheriff. In any event, there

was actual dispossession of respondent and repossession by appellant; and appellant, so far as possession of the land was concerned, was placed in more than *statu quo* before this action was begun. There could be no election of remedies on the part of respondent, because he was not in possession and had never had title to the land, and could only bring an action for damages for whatever misrepresentations had been made in inducing him to enter into the contract and go upon the land and use it for a time under the contract. The measure of damages cannot be the same as in a case where the vendee has retained title to the land. The vendee is entitled, as often stated, to the benefits of his bargain. Here he had no benefit of retaining the land and no option of remedies. 4 Sutherland, Damages (4th ed.), p. 4418; *Buckingham v. Thompson* (Tex. Civ. App.), 135 S. W. 652; *Hedden v. Griffin*, 136 Mass. 229, 49 Am. Rep. 25; *Hackney Mfg. Co. v. Celum* (Tex. Civ. App.), 189 S. W. 988; *Haener v. McKenzie*, 188 Mich. 27, 154 N. W. 59; *Stratton's Independence v. Dines*, 135 Fed. 449; *Hunt County Oil Co. v. Scott*, 28 Tex. Civ. App. 213, 67 S. W. 451; 14 Am. & Eng. Ency. Law (2d ed.), 179.

It is also urged that the allegation as to the representations of the value of the land was insufficient; that such statements are presumed to be expressions of opinion and are not generally actionable; that, if the pleader seeks to base an action upon them, he must show such circumstances accompanying the making of the representations as would make them statements of fact and actionable.

We held in *Tacoma v. Tacoma Light & Water Co.*, *supra*, that whether a representation as to value is merely an expression of opinion or an affirmation of a material fact to be relied upon is a question for the jury. We held in *Bunck v. McAulay*, 84 Wash. 473, 147 Pac. 33, that, under similar representations as to the value of property if the property had been as represented, its agreed value was the price fixed between the parties. There is no difference as to representa-

tions of value between real and personal property, and the basis of damages is the same.

It is claimed also upon this point that the complaint must show: (1) That representation was made by defendant or with his authority; (2) that it related to a material fact; (3) that it was false and wherein it was false; (4) that the plaintiff had a right to rely on it and did rely on it; (5) that plaintiff was damaged as the result of the representations, citing 12 R. C. L. 416, 422.

The complaint before us, while by no means to be commended as a model of pleading, does allege that the representations were made by the defendant or its agents; that the representations related to material facts; that they were false, though it does not sufficiently state wherein the representations were false; that the plaintiff relied on the representations; that the defendant had no reason to believe the representations when made were true; that the plaintiff was damaged as the result of the representations. Although the complaint failed to state wherein the representations were false, no proper and timely attack was made upon that, as we have heretofore stated.

As to the proposition that plaintiff had a right to rely on the representations, it is alleged that he did not have any knowledge of the facts existing at Burbank, and had no knowledge as to defendant's representations about the facts hereinbefore stated, and could not determine the truth or falsity of the statements until plaintiff had visited Burbank and then not until the latter part of a growing season had expired; that he was unversed in the conditions existing at Burbank; that he had no knowledge or information as to conditions nor as to the truth or falsity of the statements made by defendant, nor as to the land controlled by the defendant. In *Tacoma v. Tacoma Light & Water Co., supra,* discussing a similar contention, it was said:

"Where the purchaser may know the truth by looking or where the truth is shown him, he is not misled, but where he

relies upon the statements of the vendor, and has no knowledge that such statements are false, he can, when they are false, and he has been reasonably prudent, recover damages. If no knowledge of their falsity is presented to him, the purchaser may rely implicitly upon the statements of the vendor, if such statements are not so openly and palpably false that their untruth is apparent to an ordinarily prudent person."

The court there cited Pollock on Torts (Webb's Am. ed.), 377 to 379; Bishop on Non-Contract Law, § 337, and Bigelow on Fraud, 524, to the effect that, if the representations were of a character to induce action, or did induce it, that is enough. It matters not, it has been well declared, that a person misled may be said in some loose sense to have been negligent, for it is not just that a man who has deceived another shall be permitted to say to him, "You ought not to have believed or trusted me," or "You were yourself guilty of negligence." This indeed appears to be true, even of cases in which the injured party had in fact made a partial examination. That is the effect of the decisions, also, in *Wooddy v. Benton Water Co.*, 54 Wash. 124, 102 Pac. 1054, 132 Am. St. 1102; *Strand v. Griffith*, 97 Fed. 854; *George v. Kurdy*, 92 Wash. 277, 158 Pac. 965; and *Miller v. Gerry*, 81 Wash. 217, 142 Pac. 668.

Tested by these principles, therefore, while the allegations of the complaint do not show by particular facts that the respondent had a right to rely on the representations or was excused from investigation, the complaint is not thereby insufficient.

The question of the measure of damages as fixed by the complaint is the most difficult question raised under this assignment of error. We have alluded to the fact that the record of the case shows that the contract had been mutually rescinded by the action of the parties, and that respondent was not in possession and never had had title and that, therefore, he had no election of remedies. He did not sue upon a contract, but sued for damages for the deceit and fraud in inducing him to enter into a contract which had been there-

tofore entered into and thereafter rescinded.    The question then presents this, what was the proper measure of damages in such case?

Respondent proceeded upon the theory that he was entitled to all the moneys which he paid out in faith of the contract and upon the land which he had lost.    In *Bell v. Jovita Heights Co.*, 71 Wash. 7, 127 Pac. 289, vendees, who had made and entered into agreements for the purchase of certain property but had never received title and were not in possession, sued to recover back the money paid to the vendor upon the contract as part of the purchase price by reason of certain false and fraudulent representations made to them, and the court held that they could recover back such moneys as moneys had and received.    That case would certainly apply to the first item of respondent's damages stated in the complaint, alleged to have been $600 but allowed in the sum of $75 which was the correct allowance.    As to the other items, the evidence in the case fairly supports the recovery of all of them, and some of them conclusively, unless the measure of damages is improper.    If respondent could not recover the difference between the value of the land at the time as it was represented to be and the actual value of it, which we think is manifest, then certainly he would be entitled to recover the moneys that he paid out upon the land in faith of the contract.    It is shown by evidence in support of these items that he paid $75 upon the execution of the contract as part of the purchase price and gave his notes for the remainder of the first payment, that he paid approximately the amount allowed by the jury for locating himself and wife and children upon the land, that his own personal labor in improving the land amounted to approximately the amount allowed by the jury, and that his wife performed some labor for which the jury allowed $25; that the actual expenditures in building a house and barn and appurtenances upon the land in question amount to $665, and that the actual price of the material for which the White River Lumber

Company obtained judgment, referred to in the complaint, exclusive of costs, was $453.85. These items we think recoverable under the peculiar situation shown in this case, if sustained by the evidence.

The third assignment of error relates to the denial of appellant's motion for judgment upon the pleadings. This matter is decided by our discussion of the sufficiency of the complaint.

We find no merit in the fourth assignment of error, that counsel for respondent in his opening statement to the jury was permitted to rehearse facts which were incompetent, immaterial, and prejudicial. Whatever counsel stated in the opening statement as to what he expected to prove was subject to the further action of the court in permitting him to introduce testimony, and the jury were so instructed. There is no showing that appellant was prejudiced by anything contained in counsel's opening statement to the jury.

The fifth assignment is based upon the admission by the court of testimony which appellant asserts to be irrelevant, incompetent, and immaterial. Over appellant's objections, the court permitted respondent, when on the stand, to testify as follows:

"He [referring to one Pember as agent] told me what good land there was here and what it would produce; he represented that I could handle at Burbank twenty acres, that the land was in alfalfa that would produce from seven to nine tons, and I could keep twenty dairy cattle that would produce ten dollars per month without any feed, and also produce a carload of hogs on milk and alfalfa without any feed, and we could produce that much every year. He figured the hogs as about forty hogs to the acre and fifteen dollars to eighteen dollars a head. He said that the land in the condition he was selling it would do that. He said the land would produce the same as somebody else's land shown in pictures in booklet. When he came to this particular piece of land, Mr. Chandler said it would produce from seven to nine tons of alfalfa. I spoke of it being in bad shape to produce that kind of stuff, and he said that after it had been

cleaned off it would look different and would produce that. He said that it would produce enough alfalfa for this dairy herd of twenty cows. At the time I came out here and paid the money down on the land, Mr. Chandler and Mr. Pember said there would be a stand of alfalfa, that they would produce on it seven to nine tons of alfalfa the first season that I lived there, and they said that that could be done. Mr. Pember told me that this land was producing seven to nine tons of alfalfa and I would get 140 tons of alfalfa."

This is a part of the testimony of respondent wherein he recited the entire story of how he was first approached by one J. W. Pember, who was shown at the trial to have been a soliciting sales agent for the appellant or a soliciting agent to bring prospective buyers to the appellant's place of business at Burbank, Washington, at his former place of residence in Wisconsin; that these inducements were held out to him, and that he came to Burbank some time in September, 1914, and there made a trip to the land with Pember and Mr. Chandler, the vice president and general manager of appellant; that in going over various tracts of land substantially the same representations were made to him by either Pember or Chandler, to the effect that there was a good stand of alfalfa on the land that they would sell him, that it would produce from seven to nine tons per acre the first year that he was on the land, that it was worth $300 per acre, that he could make so much money out of it by keeping twenty dairy cattle and a certain number of hogs; and that, when they came to the particular tract of land which he contracted for, Mr. Chandler told him it would produce from seven to nine tons of alfalfa, that it would produce enough alfalfa for a dairy herd of twenty cows.

The other statements, in addition to those as to the land being well seeded to alfalfa, that it would produce the next year or the first year in which respondent would have possession of it seven to nine tons of alfalfa, and that thereby he could make certain profit by keeping certain stock and feeding them, while to some extent immaterial, all go to the mat-

ter of the inducement leading up to the conviction of respondent that the statements made to him by Chandler after he came to see the land and at the time that he made the first payment on it, were true; that he had no reason to believe them otherwise, and that any representations made to him by Pember in Wisconsin, while they may have been made without authority, were reaffirmed by Chandler in effect, whereby he was induced to make the bargain. Such other representations, therefore, while not directly material, were not prejudicial, but were to be considered in the light of all the evidence as to whether or not respondent was deceived, whether he had a right to rely upon the representations made to him when he saw the land and when he bargained for it, and whether the representations were true.

Much discussion is also made by appellant in its brief as to the representations alleged by respondent to have been made by Pember in Wisconsin, and as to whether Pember was an authorized agent of appellant by reason of which appellant would be bound by any representations made by him. We consider that, whether or not Pember was an authorized agent when he made the representations alleged to have been made in Wisconsin, the same representations, in effect, were made by Pember in the presence of Chandler when respondent came to visit the land, and others were made by Chandler in the presence of Pember going to the material representations alleged in the complaint by respondent; so that it is immaterial whether or not Pember was an authorized agent when he went to respondent in Wisconsin and made certain representations to him.

There is complaint, also, as to the testimony permitted by witnesses Dell Roblee and his wife to the effect that Pember told them in Wisconsin that the land at Burbank was seeded to alfalfa, and that it would raise seven to nine tons to the acre. This testimony, also, while not directly material, corroborated respondent to some extent as to his reliance upon the representations, made to him when he came to see the

land, that the land was seeded to alfalfa and that it would raise seven to nine tons per acre and was worth $300 per acre.

The material representations, if any, upon which respondent had a right to rely, were that the land which he was buying was all well seeded to alfalfa, would produce from seven to nine tons per acre the next season, and was worth $300 per acre, or $6,000, which he contracted to pay. These representations, in effect, if his testimony and his corroborating testimony are to be believed, were made by Chandler on his visit to the land, as well as by Pember.

It is true the evidence shows that respondent spent the greater part of two days, when he first visited the land in September, examining it and its surroundings; but his testimony is to the effect that he did not know anything about farming by irrigation; that he could not tell whether or not the land he bargained for was properly prepared for cultivation; that he could not tell whether or not the land was all seeded or whether it was well seeded; that he did not know anything about what the land would produce if well seeded; that he could not ascertain that fact at that time because the land had just been seeded according to their statements; that he could not ascertain the true facts until the next growing season. All his testimony shows that the next season he discovered that all of the land was not properly leveled and prepared so that it could be watered, but that there were spots which were not properly leveled and graded so that the water would run over it; that not only would those spots not grow the alfalfa on themselves, but that at larger spots around they would not grow it; that the land was not well seeded and would not grow a good crop of alfalfa, and did not that season, or ever, grow alfalfa on a large part of it; that it was not worth $300 per acre and was not worth to exceed $100 an acre.

We think, under such circumstances, the representations made were material and that the respondent had a right to

rely upon them. Even if some examination is made by the purchaser but not a thorough and complete examination, the vendor is not always allowed to receive and retain the benefit derived from a fraudulent misrepresentation relied upon by the injured party. Respondent was wholly ignorant of the peculiar and artificial processes of cultivation by irrigation, its methods and results, and of the soil. *Tacoma v. Tacoma Light & Water Co., supra; Holst v. Stewart,* 161 Mass. 516, 37 N. E. 755, 42 Am. St. 442.

The jury resolved the testimony upon these points in favor of respondent, and while we might have decided the facts otherwise, the verdict is supported by substantial evidence, and unless tainted by some undue influence or error, it is not to be set aside. This proposition is so well settled that no citation of authority is deemed necessary.

This disposes, also, of the effect of appellant's seventh assignment of error, that the court erred in denying appellant's motion for a nonsuit at the close of respondent's action.

The sixth assignment of error is that the court erred in refusing appellant the right of introducing, upon cross-examination of respondent, the contract mentioned in the pleadings. Appellant should have been permitted to examine respondent as an adverse party, either in cross-examination or during the examination of appellant's witnesses, as to any fact either directly or indirectly at issue. Rem. Code, § 1225, so provides, and this court has so decided in *Thomas v. Fos,* 51 Wash. 250, 98 Pac. 663. Such procedure ought now to be well recognized and well settled. But the appellant was not prejudiced or injured by this error of the court. The contract referred to was subsequently admitted and is a part of the record before us, and the actual date of the signing of it was proven by both appellant and respondent.

The eighth assignment of error is predicated upon the striking of certain items of counterclaim pleaded by appellant. These items were contained in paragraphs 3, 4, 5, 6, 7, 8, 9, and 12, and they were stricken upon the ground that

they were not matters which could be counterclaimed against the plaintiff's cause of action. Appellant now admits that paragraphs 2 and 7 contain matters not arising out of the contract or transaction set forth in respondent's complaint, and that they were properly excluded. They contend, however, that the other paragraphs contain counterclaims properly arising out of the contract or transaction set forth in respondent's complaint. These matters, as shown by the trial amendment made by appellant, were all based upon promissory notes given by respondent to various parties and indorsed by or assigned to the appellant, and were in each case for the performance of labor by the payee named therein at the special instance and request of the respondent in the improvement of the property described in the complaint, by the construction of fences, buildings and otherwise, the payment of all of which was guaranteed by appellant in order that statutory liens might not be enforced against the property. It was understood by the court at the time of striking those items of counterclaim that, if they were given for permanent improvements upon the land and were a part of the sum of $700 which respondent sued for as one of his items of damage, then they would be appropriate matters to counterclaim; if not, they were not proper matters of counterclaim; and it was shown that they were not included in the $700 item of damage. There was, therefore, no error in striking these counterclaims.

The ninth assignment of error is as to the admission in evidence of a judgment in favor of the White River Lumber Company against respondent, which is set forth as one of the items which respondent claimed the right to recover as an item of damage, the ground of objection being that it is not an element of damage. We have disposed of that in disposing of the demurrer to the amended complaint as a measure of damages.

The tenth claim of error relates to testimony referring to a pamphlet or booklet which was exhibited in evidence as the

respondent's exhibit 1, being a pamphlet issued by the Burbank Company and written by Mr. Chandler, the vice president and general manager, and tending to show the good faith of the writer in publishing the book. The book itself, the admission of which was objected to by appellant, was properly in evidence as being some evidence of the representations and inducements made by the company and its officer and agent to respondent, and the statements therein contained showing for themselves what they were published for. Mr. Chandler testified very fully as to why he wrote the pamphlet and the sources of his information and his faith in its statements. We think there was no testimony excluded that was material or that would throw any further light upon it or his good faith.

The eleventh assignment of error, that the court erred in denying motion for directed verdict at the close of the case, has been virtually disposed of in considering previous assignments.

It is next claimed that the court erred in refusing appellant's requested instruction No. 1. By this proposed instruction, the court was requested to charge the jury to disregard and not consider any representations made by J. W. Pember, except such statements as they might find from the evidence were made in the presence of E. M. Chandler. It is strenuously contended that there was absolutely no proof of Pember's agency or of the extent of his authority, except his own declarations. It is contended that, while the record shows that Pember was a real estate broker employed to bring prospective purchasers to see the lands of the Burbank Company, working upon a commission basis, this does not constitute any such authorization as would bind the company by any representations or inducements he may have held out. But it is shown that Pember used the book heretofore mentioned and brought prospective purchasers to Burbank; that he went with respondent and Chandler to see the lands; that both he and Chandler made declarations of the same char-

acter to respondent; that Pember received commissions on such sales; that Pember received the first $75 made as a payment by respondent upon the land he bargained for, and that it was applied by Chandler to the purchase price of the land. Whatever representations or inducements Pember may have made not in the presence of Chandler were to the same effect as those made in his presence, and the fact that Pember continued his solicitations and representations to respondent after the latter came to Washington and went to see the land, and in the presence of Chandler, is a circumstance tending to show that Pember was an agent of the company and, among the other circumstances, that he was authorized to make the representations alleged to have been made. It is true, however, that evidence of his declarations to respondent and other witnesses would not establish his agency or the extent of his authority. The agency and the scope thereof were, however, established circumstantially by other facts shown in the evidence, if the jury believed the evidence of such facts, and no representations are shown to have been made by Pember in Wisconsin widely at variance with the representations made by him in Washington in the presence of Chandler, and those made by Chandler himself. There is and can be no dispute that Chandler was a lawfully authorized agent; in fact, the general agent or general manager of the appellant. The court instructed the jury clearly and concisely that respondent was required, before he was entitled to a recovery, to establish by a fair preponderance of the evidence that the defendant, or its lawfully authorized agent acting in its behalf, made the representations alleged in the complaint. We think this was sufficient.

An error was claimed as to the admission of a certain newspaper advertisement by another firm advertising Burbank lands, exhibited and used by Pember and read by respondent, which constituted part of Pember's general representations. No particular weight was claimed to have been attached to it and presumably none was by either respondent

or jury. At any rate, it does not appear to have prejudiced appellant in any way, even conceding that it should have been excluded from evidence.

What we have said as to other errors claimed disposes in effect of appellant's claim of error in regard to instructions refused by the court.

Appellant's last assignment of error, that the court should have granted a new trial, involves a consideration only of the claims of error previously discussed.

Finding no error in the record which will justify a reversal, the judgment is affirmed.

ELLIS, C. J., MOUNT, FULLERTON, and PARKER, JJ., concur.