[No. 14381. Department One. May 8, 1918.]

LIZZIE SMITH et al., Respondents, v. GEORGE W. FLETCHER, Appellant.[1]

COURTS—JURISDICTION—LANDS IN ANOTHER STATE. The courts of this state have jurisdiction to enter judgment *in personam* in an action to cancel a note and mortgage upon lands in another state, upon the ground of fraud, having acquired jurisdiction of the person of the defendant.

VENDOR AND PURCHASER—RESCISSION BY VENDEE—FRAUD—DUTY TO INSPECT—EVIDENCE—SUFFICIENCY. A contract for the purchase of arid land may be rescinded for fraudulent and material misrepresentations as to the adequacy of a water supply, through a ditch, six miles in length, work on which was under way at the time of plaintiff's inspection, where the facts were peculiarly within the knowledge of the vendor and difficult of ascertainment and the representations were relied upon on that account.

SAME—RESCISSION BY VENDEE—INTEREST. Upon rescission of a contract for the sale of land in another state, judgment granting a cancellation of a note and mortgage for $10,000 given by the plaintiff, properly allows, in the alternative, a money judgment for the total

[1]Reported in 173 Pac. 19, 636.

price paid and the mortgage, with interest on the whole sum from the date of sale; since, if the mortgage is not cancelled, the plaintiff will be liable for interest secured by the mortgage.

APPEAL—DECISION—EXPIRATION OF OPTION. Upon affirming a judgment which granted appellant an option that expired before the hearing on appeal, the affirmance will be with the privilege of exercising the option granted.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered February 27, 1917, upon findings in favor of the plaintiffs, in an action for equitable relief, tried to the court. Affirmed.

*E. H. Belden (E. C. Hale,* of counsel), for appellant.

*Berkey & Cowan* and *Samuel R. Stern,* for respondents.

FULLERTON, J.—The respondents, in May, 1916, took a conveyance of certain lands in the state of Idaho from George W. Fletcher, a resident of that state. A cash payment of $4,500 was made on the execution of the conveyance, and a promissory note for $10,000 taken for the remainder of the purchase price, secured by mortgage on the land purchased. The deed included certain water rights for the irrigation of the land, comprising a two-ninths' interest in a reservoir and the full ownership of a ditch carrying the water therefrom. In August, 1916, the respondents began an action in the superior court of Spokane county, state of Washington, for the cancellation of their note and mortgage and the recovery of the portion of the purchase price paid on the land, basing their action on the alleged fraudulent representations of the vendor that the reservoir and ditch furnished sufficient water to irrigate the whole tract of 160 acres for the production of hay, grain and fruit and afford a surplus of water for sale to adjacent landowners. Jurisdiction of the person of the appellant, Fletcher, was acquired, and the

cause proceeded to trial before the court without a jury. Findings and conclusions were made and judgment entered in favor of respondents, from which judgment this appeal is prosecuted. Pending the appeal in this court the appellant George W. Fletcher died. Upon proper showing made, his executor was by this court ordered substituted as party appellant.

By demurrer to the complaint in the trial court and by argument here, the appellant raises the objection that the superior court of Spokane county had no jurisdiction of the subject-matter of the action, for the reason that it seeks to subject lands located in another state to the judgment of a court of this state; that any judgment rendered here could not operate extraterritorially, and hence would be ineffective to grant the relief sought by the respondents. There is no claim that the court did not have jurisdiction of the person of the appellant, who was a nonresident of the state. The action brought was the equitable one of rescission on the ground of fraud, praying the cancellation of a note and mortgage given by respondents on the purchase price of land lying in another state and the refund of moneys paid, a deed being tendered reconveying the land from the respondents to the appellant. It did not seek to subject land in a foreign jurisdiction to the judgment of a court of this state, but was merely designed to operate against an individual; in other words, a remedy *in personam* and not one *in rem* was sought.

It is a universal rule that the courts of one state cannot pass judgment on the title to land in another state. But where the action is aimed at the personal relations of parties in connection with property beyond the jurisdiction, it is well recognized that courts may afford relief. This court, in the case of *Rosenbaum v. Evans*, 63 Wash. 506, 115 Pac. 1054, held that the courts

of this state had jurisdiction to reform a deed to land in another state, and took occasion to review a number of decisions relating to the exercise of jurisdiction incidentally affecting lands in another state. The opinion shows that such jurisdiction has been frequently exercised, where extraterritorial lands were involved, to compel the execution or cancellation of deeds, the specific performance of contracts relating to real property, the reformation of deeds, the enforcement of trusts in real property, the avoiding of a deed and ordering reconveyance of land, and the foreclosure of mortgages without the jurisdiction of the court. The principle upon which courts assert jurisdiction in such cases is stated in *Lindley v. O'Reilly,* 50 N. J. L. 636, 15 Atl. 379, 7 Am. St. 802, 1 L. R. A. 79, in the following language:

"Ever since *Penn v. Lord Baltimore,* 1 Ves. Sr. 444, it has been established law that in cases of contract, trust or fraud, the equity courts of one state or country, having jurisdiction of the parties, are competent to entertain a suit for specific performance, or to establish a trust, or for a conveyance, although the contract, trust or fraudulent title pertains to lands in another state or country. The principle upon which this jurisdiction rests is, that chancery, acting *in personam* and not *in rem,* holds the conscience of the parties bound without regard to the *situs* of the property. It is a jurisdiction which arises when a special equity can be shown which forms a ground for compelling a party to convey or release, or for restraining him from asserting a title or right in lands so situated, and is strictly limited to those cases in which the relief decreed can be obtained through the party's personal obedience. If it went beyond that the assumption of jurisdiction would not only be presumptuous but ineffectual. . . . The decree in a suit of this aspect imposes a mere personal obligation, enforceable by injunction, attachment or like process, against the person, and cannot operate *ex proprio vigore* upon lands

in another jurisdiction to create, transfer or vest a title.''

See, also, *Lindsley v. Union Silver Star Min. Co.,* 26 Wash. 301, 66 Pac. 382.

The appellant cites the case of *Olympia Mining & Milling Co. v. Kerns,* 64 Wash. 545, 117 Pac. 260, where this court sustained the conclusion of the trial court refusing to assume jurisdiction on the ground of comity over an action on a contract in which was involved the title to land in Idaho, and relegating the parties to an action within the jurisdiction of the *situs* of the property. While the courts of one state may well refuse to exercise jurisdiction in such cases on the ground of comity, their action in so doing amounts to no more than a matter of discretion. In the case cited, it appeared not only that the action involved the title to land in Idaho, which this court had no jurisdiction to determine, but also that the action did not permit of the rendition by the court of this state of an enforceable judgment *in personam* for damages or any alternative relief. That case in nowise departs from the rule announced in the *Rosenbaum* case, but is a tacit recognition of it.

The decree in the case before us was as follows:

''It is ordered, adjudged and decreed: That plaintiffs recover of the defendant the sum of $4,500 with interest thereon from May 1st, 1916, and that the defendant herein surrender to the plaintiffs that certain note now in his possession, dated May 1st, 1916, in the sum of $10,000, signed by the plaintiffs, and that he deliver to said plaintiffs that certain mortgage given to secure said note, and which said mortgage is now of record in the office of the county recorder of Elmore county, Idaho, and that he execute a satisfaction of said mortgage and deliver the same to the plaintiffs, and that he deliver such note and mortgage and cancellation within thirty days from date hereof, and the

plaintiffs having tendered into court a good and sufficient deed to the property, upon which said mortgage is a lien, and also a deed for the said two-ninths' interest in the said reservoir referred to in the findings herein, if the said defendant shall fail within said thirty days from date hereof to accept said deeds and surrender said note and cancel said mortgage or deliver a satisfaction thereof to these plaintiffs, then that, in addition to the said sum of $4,500 above referred to, judgment be and hereby is rendered against said defendant for the additional sum of $10,000, with interest from May 1st, 1916.''

This decree was within the issues, involved no adjudication upon the title to the lands, and merely rendered a personal judgment for the surrender of a note and mortgage, the cancellation or satisfaction of the mortgage, and in the alternative for a money judgment by way of damages. It merely placed the parties *in statu quo* after setting aside a contract based on fraud, and is enforceable against the appellant personally.

The main contention of the appellant is rested upon the insufficiency of the evidence to establish misrepresentation of material matters, and the reliance thereon of the respondents, his claim being that the respondents purchased after an inspection of the lands by their agent, H. C. Lambach.

It appears from the evidence that the lands in Idaho were purchased by the respondent Lizzie Smith, a resident of Iowa, the purchase being consummated by her son-in-law, Lambach, a resident of the state of Washington, who was acting as her agent. Lambach visited the Idaho lands on March 24, 1916. The lands were arid and valueless without irrigation. He expressed himself as satisfied with the lands in case there was a sufficient water right appurtenant for their proper irrigation. The appellant suggested that he inspect the reservoir and ditch that went with the land in

order to satisfy himself on that score. Lambach answered that he was not conversant with irrigation projects, and would have to rely on the appellant's statement in that regard even though he did inspect them. The appellant then represented that he owned a two-ninths' interest in a storage reservoir; that it afforded an ample water supply for the 160 acres whose sale was under contemplation, and for 80 acres of contiguous land owned by appellant's son; that the ditch had recently been cleaned and was in fine shape; and that, by lowering the ditch a couple of feet, enough water would be provided to enable him to sell sufficient to irrigate an additional 1,000 acres.

The ditch leading from the reservoir was six miles in length, and work had already been started to reduce the level of its bed so that the headgate at the reservoir could be lowered two feet, which, the appellant assured him, would afford abundance of water during the whole irrigation season, not only for the lands sold, but for contiguous lands. It appears that the appellant himself had not utilized the reservoir waters for the irrigation of his land, but had merely maintained a slight flow in the ditch for the purpose of preserving his title to its right of way. The appellant had never irrigated in excess of thirty-one acres of land, and it appears that, for that purpose, he had been dependent on sources of supply other than the reservoir waters. After the purchase of the land by the respondents, their tenant attempted to utilize the reservoir, but could not lead the waters to their lands for the reason that the water disappeared through crevices and fissures in the ditch bed where it was constructed over lava rock. There was expert evidence that the reservoir would not supply water to adequately irrigate the respondents' land, and that the ditch could be made dependably

serviceable only at great expense. The respondents went into possession early in the month of May, and on the 24th of that month the reservoir dam burst, allowing three-fourths of the storage waters to escape, and in the latter part of June the ditch broke. The respondents raised satisfactory crops of alfalfa on eighteen acres of their land, and had water for this purpose during the season, but the major portion of the water used came to them by sufferance from another ditch in which they possessed no rights. Their experience with the reservoir and ditch, on which their crops were dependent, having convinced the respondents that the appellant had misrepresented the facts as to the water supply, they promptly, within three and one-half months following their purchase, gave notice of their election to rescind the contract.

We think the finding of the trial court that the representations made by the appellant to the respondents were fraudulent and material is amply sustained by the evidence. The appellant contends, however, that, even if that be granted, the respondents are not entitled to recover, for the reason that their agent was on the ground and in a position to inspect the irrigation facilities and was urged by the appellant to do so. On that assumption he argues that, having had full opportunity to investigate the truth of the representations, he purchased at his own peril. But this court, in a line of cases extending from its earliest history down to the recent case of *Eyers v. Burbank Co.*, 97 Wash. 220, 166 Pac. 656, has adhered to the rule that, where facts are peculiarly within the knowledge of the vendor and difficult of ascertainment by the vendee, the vendee who relies on the vendor's word is entitled to rescind for misrepresentation as to material facts, although he may have inspected the land and made some

investigation of the subject-matter of the representations.

In *Eyers v. Burbank Co.*, we said:

"It is true the evidence shows that respondent spent the greater part of two days, when he first visited the land in September, examining it and its surroundings; but his testimony is to the effect that he did not know anything about farming by irrigation; . . . We think, under such circumstances, the representations made were material and that the respondent had a right to rely upon them. Even if some examination is made by the purchaser but not a thorough and complete examination, the vendor is not always allowed to receive and retain the benefit derived from a fraudulent misrepresentation relied upon by the injured party. Respondent was wholly ignorant of the peculiar and artificial processes of cultivation by irrigation, its methods and results, and of the soil."

In *Tacoma v. Tacoma Light & Water Co.*, 17 Wash. 458, 50 Pac. 55, we said:

"Where the purchaser may know the truth by looking, or where the truth is shown him, he is not misled, but where he relies upon the statements of the vendor, and has no knowledge that such statements are false, he can, when they are false, and he had been reasonably prudent, recover damages. If no knowledge of their falsity is presented to him, the purchaser may rely implicitly upon the statements of the vendor, if such statements are not so openly and palpably false that their untruth is apparent to an ordinarily prudent person."

The appellant contends that the trial court erred in its allowance of interest. The purchase price of the land was $14,500, for which the respondents gave $4,500 cash and their note for $10,000. The court directed that appellant repay the $4,500 and surrender and cancel the note and mortgage for $10,000, and, in case of default, that the respondents have a money judgment

for $14,500, with interest at six per cent from the date
of sale. The objection made is that, as to the $10,000
note, the respondents had never been deprived of the
use of the actual cash represented by it, and hence
have never suffered damage to that extent. The de-
cree was an equitable one directing appellant to return
the promissory note, and, in case of refusal, awarding
judgment for its face value, with interest. In case of
its nonreturn and possible negotiation, the respond-
ents might be subjected to liability upon it, thereby
suffering damages to the extent of the principal and
interest of the note. The alternative judgment was
proper, and, under our statute (Rem. Code, § 457), the
prevailing party was entitled to interest on the judg-
ment.

The decree and judgment of the trial court is af-
firmed.

ELLIS, C. J., PARKER, MAIN, and WEBSTER, JJ., concur.

ON PETITION FOR REHEARING.
[Decided June 24, 1918.]

PER CURIAM.—The appellant asks a rehearing in the
foregoing cause, or, in the alternative, for a modifica-
tion of the decree of affirmance as ordered by this
court. On the main issue, after a careful considera-
tion of the petition, the court is satisfied with the con-
clusion reached, and declines to enter upon a further
consideration of the merits of the cause.

The decree of the lower court gave the appellant an
option to submit to a judgment for the face value of
the note and mortgage under consideration, or to re-
turn them for cancellation and delivery within thirty
days after the date of the decree. The appellant sug-
gests that, since this limitation has expired pending
the appeal, he may be denied the right to exercise the
option granted him in the decree because of the order

of this court for affirmance without reservation of the right, and he asks, unless the intention of the court was otherwise, that he be granted a limited period after the return of the remittitur in which to exercise the option. It was not the intention of this court in directing an affirmance to deny to the appellant the benefit of the option, and to the end that there may be no question concerning it, the order of affirmance will be so far modified as to allow the appellant thirty days after the remittitur reaches the trial court in which to exercise any or all of the privileges granted him by the decree of that court.

Let the remittitur go accordingly.