[No. 15148. Department One. April 8, 1919.]

W. V. CHAMPNEYS et al., Appellants, v. T. L. IRWIN et al., Respondents.[1]

FRAUD (6, 7, 22)—RELIANCE ON REPRESENTATIONS—EVIDENCE—SUFFICIENCY. Fraud in grossly overstating the income from an apartment house containing eighteen apartments which defendant traded for plaintiffs' farm, is actionable as concerning material matters peculiarly within the defendant's knowledge, notwithstanding plaintiffs made an inspection of the property, since they could not readily ascertain the facts by a reasonable investigation.

TRIAL (55)—TAKING CASE FROM JURY. Where there is substantial evidence sustaining a verdict if believed by the jury, the court cannot weigh the evidence and sustain a challenge thereto.

FRAUD (18, 19)—ACTIONS—EVIDENCE—ADMISSIBILITY—INTENT AND KNOWLEDGE. In an action for fraud in misrepresenting the income from an apartment house, evidence that defendant had previously attempted to make a fictitious lease to another at inflated valuations, is admissible on an issue as to his preconceived intention to defraud.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 20, 1918, dis-

[1]Reported in 180 Pac. 405.

missing on the merits, an action for fraud, upon sustaining a challenge to the evidence, after trial to a jury. Reversed.

*Trefethen & Findley* and *Cole & Dolby*, for appellants.

*Preston, Thorgrimson & Turner*, for respondents.

MAIN, J.—The plaintiffs brought this action for the purpose of recovering damages for fraud alleged to have been practiced on them in the exchange of real estate. After the issues were framed, the cause came on for trial before the court and a jury. At the conclusion of the plaintiffs' evidence, the defendants challenged the legal sufficiency thereof and moved the court to withdraw the case from the jury and enter a judgment of dismissal. This motion was sustained, and a judgment accordingly entered. The plaintiffs appeal.

The facts may be summarized as follows: For many years prior to 1916, the appellants had been the owners of a ranch in Okanogan county, consisting of approximately 660 acres, all of which was in a good state of cultivation except about 80 acres. The respondents were the owners of an apartment house in Seattle, known as the Carlysle Apartments. The appellants had listed their ranch for sale with one J. E. Giebner, a real estate agent located in Seattle. During the early spring of the year 1916, Giebner and the respondent T. L. Irwin began negotiations looking to the exchange of the apartment house for the ranch. In the course of these negotiations, Irwin delivered to Giebner a statement which purported to be a description of the apartment house, its location, the amount of revenue and the expenses. Under the head of revenue was the following recital:

```
6—6 room apartments @ $40.......... $240.
12—4.................... 30.......... 360·
                                     ─────
                                     $600
                                     12 months
                                     ─────────
                                     $7,200 per yr.
```

The expenses as itemized totaled $1,394. The statement further recited "Net income $5,806 annually. This is 8 per ct. on $75,000."

After receiving this statement, Giebner sent it by letter to the appellant W. V. Champneys. A few days later, the appellants came to Seattle for the purpose of looking over the apartment house. They, with Giebner, met Irwin at the house and spent about an hour and a half in looking it over. Subsequently and on the same day or the day following, a proposition was made by the appellants to Irwin for an exchange. After this proposition was made, the appellants returned to the ranch in Okanogan county and Irwin accompanied them for the purpose of looking over the same. The result was that a contract of exchange was entered into and thereafter deeds were exchanged. After making the exchange, Irwin took a lease on the apartment house for one year, but a few months later this was canceled and the appellants went into possession. Irwin took possession of the ranch, and a few months later sold it to a third person.

The appellants bring the action, claiming that a fraud was practiced on them in a number of respects. Without reviewing the various items of fraud charged, it may be said we are in accord with the views expressed by the trial court in dismissing the action except for one particular. The statement above mentioned, which is referred to in the evidence as the yellow slip, did not correctly show the income of the property. Therein the income was grossly overstated. The question, therefore, is whether the appellants, as

a matter of law, are to be charged with knowledge of
the falsity of the statement. Even though they in-
spected the property, they would not be charged with
knowledge of facts which were peculiarly within the
knowledge of the other party and which could not be
easily ascertained by an investigation. *Johnson v.
Ryan,* 62 Wash. 60, 112 Pac. 1114; *Blum v. Smith,* 66
Wash. 192, 119 Pac. 183; *Smith v. Fletcher,* 102 Wash.
218, 173 Pac. 19, 636. In the case last cited, it was
said:

"But this court, in a line of cases extending from its
earliest history down to the recent case of *Eyers v.
Burbank Co.,* 97 Wash. 220, 166 Pac. 656, has adhered
to the rule that, where facts are peculiarly within the
knowledge of the vendor and difficult of ascertainment
by the vendee, the vendee who relies on the vendor's
word is entitled to rescind for misrepresentation as to
material facts, although he may have inspected the
land and made some investigation of the subject-mat-
ter of the representations."

To deceive relative to the earnings of a property is
to deceive concerning a material matter, and when
such misrepresentations are proven, entitle the injured
to relief. The statement of net income, when made,
must be true. *Tacoma v. Tacoma Light & Water Co.,*
17 Wash. 458, 50 Pac. 55; *Hayes & Porter v. Wood,*
86 Wash. 254, 150 Pac. 1.

The appellants had a right to rely upon this state-
ment and it cannot be said, as a matter of law, that
the falsity thereof could have been ascertained by rea-
sonable investigation. What the income of the prop-
erty was, was a matter peculiarly within the knowl-
edge of the owner of the apartment house. There is
no rule of law which required the appellants to act
on the assumption that the statement as to the matter
of income was false. To determine whether the state-

ment made as to the income was correct or incorrect, the appellants were not required to visit each of the eighteen apartments and inquire of the tenants therein the amount of rent being exacted, in order to determine whether they were being deceived.

It is said that appellants knew that two or three of the apartments were not rented at the time they looked at the property, and that therefore they were charged with knowledge that the statement of income was incorrect. Whether they knew at that time that any of the apartments were not occupied, may under the evidence be doubtful; but assuming that they did, this would only charge them with knowledge that the statement was incorrect in so far as it indicated a revenue from the apartments which were then not occupied. It did not charge them with knowledge that those apartments, when rented, had at no time produced the amount specified in the statement.

The statement was a gross exaggeration of the facts as to the income of the property, which facts were peculiarly within the knowledge of the owner, and the falsity thereof could not readily have been ascertained by a reasonable investigation. Irwin, however, claims that the statement was not given for the purpose of showing present or past income, but for the purpose of showing what the apartments could be made to bring in and the percentage that would be earned at such prices. He was called as a witness for the plaintiff and testified that the statement was not given as showing a present fact as to the income, but the possible income that the property could be made to produce. Giebner testified that the statement from Irwin was given to him as an up to date statement, and that Irwin said at the time: "I will give you a statement of the Carlysle Apartments." Champneys testified:

"I relied on Mr. Irwin's scrap of paper," and that Irwin had told him that every word stated was true.

It is argued that, under this evidence, the court was warranted in withdrawing the case from the jury because there was a failure to show that the statement had been given purporting to be a statement of facts and not an opinion as to the future possible income. There is further testimony that Irwin had stated to a number of persons, subsequent to the transaction, that he did not want Champneys to come into possession of the apartment house until after he had had the opportunity to dispose of the farm, because he had made from $25,000 to $30,000 on the transaction and he was afraid that, when the Champneys knew the exact facts, an action would be brought to rescind the sale.

There being a challenge to the sufficiency of the evidence at the close of plaintiffs' case, the court is not permitted to weigh the testimony, but only determine whether there is such substantial evidence, if believed by the jury, as would sustain a verdict. The jury would have had the right to disbelieve the testimony of Irwin, or of other witnesses. Whether the statement was given purporting to contain facts or whether it was intended as a mere expression of an opinion as to the possible future income, was a jury question.

We have not overlooked the general rule that fraud is never presumed and must be established by evidence which is clear and convincing. The evidence here is such that the jury had a right to conclude that it met the requirements of this rule. We think the trial court erred in withdrawing the case from the jury.

Since the case must be retried, there is another question of minor importance which should be con-

sidered. Upon the trial, a witness, Geo. F. Gates, a former lessee of the apartment house, testified that Irwin, after he had acquired Gates' interest in the unexpired term of the lease, desired to re-lease the property to him for $350 per month and rebate at the end of each month $75 of the rent. This, for the purpose of making a showing as a basis of income upon which to sell the property, as $275 per month did not show a sufficient income as a basis for such a sale as he, Irwin, would want to make. After this evidence was received, upon motion it was stricken. While this was not a transaction with the present parties, it seems to us that, under the particular facts of this case, the evidence should have been admitted as tending to show whether Irwin, at the time he delivered the yellow slip, had a preconceived intention to defraud, and as bearing upon whether the statement was made as a matter of opinion or as a statement of the facts.

Where fraud is charged, consistent with the established rules of law in such cases, the strict rules of evidence are relaxed in order that every material circumstance, though remote, may be shown. *American Sav. Bank & Trust Co. v. Bremerton Gas Co.,* 99 Wash. 18, 168 Pac. 775.

While the failure to receive this evidence would not be sufficient of itself to justify a reversal of the judgment, since there is to be a new trial, it seems best to suggest what we believe to be the better ruling.

The judgment will be reversed and the cause remanded for a new trial.

CHADWICK, C. J., MACKINTOSH, MITCHELL, and TOLMAN, JJ., concur.