[No. 19984.　Department One.　June 30, 1926.]

F. K. EASTER *et al., co-partners doing business as F. K. Easter & Company, Respondents,* v. C. C. HENRY, *Appellant.*[1]

[1] FRAUD (9)—IN PARTICULAR TRANSACTIONS OR RELATIONS— STOCK BROKER'S SALE. Where there were no relations of broker and customer or principal and agent existing between the parties and no misrepresentations as to the value of the stock, a broker buying stock is under no obligation to disclose the market price and is entitled to make the best bargain he can; and the seller making his own offer cannot avoid the sale by pleading the expert knowledge of the broker and his own ignorance as to the market.

Appeal from an order of the superior court for King county, Paul, J., entered April 19, 1926, upon findings in favor of the plaintiff, after sustaining a demurrer to the answer of the defendant in an action for breach of contract, tried to the court. Affirmed.

*S. A. Keenan,* for appellant.

*Bausman, Oldham & Eggerman,* for respondents.

HOLCOMB, J.—Respondents sue to recover damages for the alleged breach of a contract to sell and deliver

¹Reported in 247 Pac. 469.

sixty shares of the stock of the Pacific Coast Biscuit Company. The complaint alleged a contract consisting of telegrams exchanged between the parties, and the execution of the contract was admitted by the answer of appellant.

Appellant filed an affirmative answer alleging the following facts:

"That plaintiffs at all the times herein mentioned and for a considerable time theretofore maintained offices in the Hoge Building in Seattle, Washington and held themselves out as legitimate stock brokers, representing both buyer and seller in all stock transactions. They also held themselves out, and pretended to be experts on the price and value of different stocks on the market in Seattle, and purported to give and furnish to the public, and prospective customers, the true market price of stocks as they sold from day to day on the market in Seattle. That defendant knew H. F. Sharpless, one of the plaintiffs, and also knew that he was somewhat familiar with the Pacific Coast Biscuit Company and especially with the market of the stock of that company and defendant had faith in the honesty and veracity of said Sharpless and his firm at the time he sent the telegram set out in plaintiff's complaint, which telegram was based entirely upon the information as to the value of the stock contained in the following letter received by defendant on or about the 10th day of December, 1925, which letter is in words and figures as follows:

" 'F. K. Easter & Company
Stocks and Bonds
201 Hoge Building Annex
Seattle, Washington.

" 'Mr. C. C. Henry
c/o Pacific Coast Biscuit Co.
Los Angeles, California.

" 'Dear Sir: Are you disposed to sell a portion of your holdings of Pacific Coast Biscuit Company stock? As you are probably aware the stock dividend has now

14—139 WASH.

been declared, and you have probably received the new stock by this time. We can possibly handle 100 shares or so of the new stock at around $105 per share.

"'If you desire to sell, please make us a firm offering by telegram as to how many shares you wish to sell and the price to us.          Very truly yours,

"'F. K. Easter & Company

"'S:G          By H. F. Sharpless (Signed)'

II

"At the time the defendant received said letter he had full confidence and faith in said Sharpless and in said brokerage concern, and believed that $105 was a true value of said stock and for that reason defendant concluded not to sell it and no reply was made to said communications and wholly dismissed from his mind the idea of selling said stock.

III

"That defendant received from said brokers on December 22, 1925, the following telegram in words and figures as follows:

"'C. C. Henry

"'Pac. Coast Biscuit Co. Losangeles Calif at what price will you sell fifty or one hundred Pacific Coast Biscuit wire us firm offering.          F. K. Easter & Co.'

"And to that telegram, defendant sent the telegram set out in plaintiffs' complaint and then on December 26, plaintiffs sent to defendant another telegram in words and figures as follows:

"'C. C. Henry

"'Care Pacific Coast Biscuit Co. Losangeles Calif. At what price will you sell us an additional fifty shares or any part thereof Pacific Coast Biscuit Company Wire us firm offering.          F. K. Easter & Co.'

IV

"That at the time plaintiffs wrote the letter of December 7, 1925, they knew that said stock was worth, and was selling at that time for 135 per share; and at that time plaintiffs and each of them were in possession of the financial condition and otherwise had full information of the general condition of the Pacific Coast Biscuit Company; and from such knowledge and

such information, plaintiffs then knew that by reason
of the most excellent condition of said corporation,
then within their knowledge, that said stock was not
only worth 135 at the time they wrote the letter, but
that it would constantly continue to increase in value,
as it has done; that plaintiffs and each of them, at all
the times herein mentioned, and for many years prior
thereto were expert stock brokers, being a part of
their business and activities to keep informed on the
present value of all stocks handled on the stock
markets at Seattle and especially did they maintain
such expert knowledge as to the value of the Pacific
Coast Biscuit Company's stock.

"That at the time of writing said letter, plaintiffs
and each of them knew that this defendant was a
traveling salesman whose entire time was taken up
in the sale of goods and procurement of customers;
that he had no knowledge whatever of stock trans-
actions and was entirely ignorant of the customs and
manner of dealing in the stock of corporations; plain-
tiffs also at the time knew that the Pacific Coast stock
was not listed on the markets in Southern California
or elsewhere. And it was by reason of defendant's
ignorance in these particulars and his inability to pro-
cure any dependable information on the value of the
stock, that they wrote the letter of December 7, 1925,
for the fraudulent and expressed purpose of mislead-
ing defendant as to the market value of said stock,
and at the same time plaintiffs and each of them knew
that this defendant would be so mislead and that he
would believe that his said stock was not worth to
exceed par or at most 105.

V

"That in reliance upon the veracity and the honesty
of said plaintiffs as such brokers, and especially rely-
ing upon the letter of December 7, as plaintiffs in-
tended the defendant should rely, he was induced to
forbear and did forbear inquiry as to the real value
of said stock of anybody in possession of such informa-
tion; and that he would not have sold nor offered to
have sold the said stock at 115 or any amount less than
the then market price of 135 if he had not been in-

duced to do so by the false and fraudulent information given to him by plaintiffs. And that in sending the telegram offering to sell at 115, he was entirely influenced by plaintiffs' letter as to the value of said stock.

VI

"That the said purported sale set out in plaintiffs' complaint was procured and obtained from defendant by the false and fraudulent conduct of the plaintiffs as aforesaid."

To the affirmative answer respondents demurred, the trial court sustained the demurrer, appellant declined to plead further, the case was thereafter set for trial for proof as to the amount of damage, resulting in findings of fact, conclusions of law and a judgment in favor of respondents in the sum of $1,920, with interest and costs.

[1] Appealing, appellant claims error only in sustaining the demurrer to the answer.

It will be observed, by the affirmative allegations of appellant's answer, that he relies chiefly upon the allegations of paragraph 4 contained therein, particularly upon the allegation that, at the time the letter of December 7 was written, respondents knew that the stock was worth, and was selling for, $135 per share, and were in possession of knowledge of the financial condition of the company, and that the letter was written for the purpose of deceiving appellant into the belief that the stock was not worth more than $105.

It is also alleged, however, in paragraph 2 of the affirmative answer, that appellant concluded not to sell the stock, and no reply was made to that communication and the matter was wholly dismissed from his mind.

While the demurrer admits the truth of the allegations of the affirmative answer, there is nothing contained in the answer setting up the communications

between the parties tending to show any misrepresentations as to the market value.

The parties were dealing at arms' length, and there was no fiduciary relation between them. The mere allegation that appellant was acquainted with Sharpless, one of the members of the brokerage firm, in no wise tends to show any confidential or fiduciary relation, or establish any duty upon respondents other than would be required of any business firm with whom appellant might deal.

Appellant cites and relies generally upon our cases: *Smith v. Fletcher,* 102 Wash. 218, 173 Pac. 19, 636; *Eyers v. Burbank Co.,* 97 Wash. 220, 166 Pac. 656; *Boehme v. Broadway Theater Co.,* 91 Wash. 104, 157 Pac. 218; *Christensen v. Koch,* 85 Wash. 472, 148 Pac. 585; *Crawford v. Armacost,* 85 Wash. 622, 149 Pac. 31; and *Jammie v. Robinson,* 114 Wash. 275, 195 Pac. 6; wherein we have held vendors liable in damages for deceit, when material facts were either misrepresented or concealed which, under the circumstances of the case, should have been disclosed.

As laid down in Pomeroy's Equity Jurisprudence (3d ed.), § 903:

"The decisions recognize a marked difference between the two [vendor and vendee] with reference to their duty to disclose. The contract of sale is not intrinsically fiduciary, . . . and the conclusion is clearly established, that under ordinary circumstances, there being no previously existing fiduciary relation between the parties, and no confidence being expressly reposed by the vendor in the very contract, no duty rests upon the vendee to disclose facts which he may happen to know advantageous to the vendor,— facts concerning the thing to be sold which would enhance its value, or tend to cause the vendor to demand a higher price, and the like; so that a failure to disclose will not be a fraudulent concealment."

See, also, 12 R. C. L., p. 281, §§ 45 and 46.

The affirmative allegations of the answer do not plead that the relation of broker and customer, or principal and agent, existed between the parties, but, on the contrary, allege that respondents were merely bidding for the stock, to purchase on their own account.

Manifestly, respondents had the right to buy the stock at less than its market value, if they could, and appellant had the right to refuse any offer made for the stock, if he desired, and did refuse the first offer made.

Appellant also strongly relies upon the case of *Laidlaw v. Organ,* 15 U. S. 178, 4 L. Ed. 214. There, the purchaser desired to buy a quantity of tobacco. He had known that the treaty of peace had been signed between this country and England, by reason of which the price of tobacco had advanced about fifty per cent. He went to the seller to buy several hogsheads of tobacco. During the conversation, the seller inquired if he had heard any news as to peace with England, or news which would tend to increase the price or value of tobacco. To that inquiry the buyer pretended not to hear, and made no reply. The trial court directed a verdict in favor of the buyer. In reversing the lower court, Chief Justice Marshall said:

"The court is of the opinion, that he was not bound to communicate it. It would be difficult to circumscribe the contrary doctrine within proper limits, where the means of intelligence are equally accessible to both parties. But at the same time, each party must take care not to say or do anything tending to impose upon the other. The court thinks that the absolute instruction of the judge was erroneous, and that the question, whether any imposition was practised by the vendee upon the vendor, ought to have been submitted to the jury. For these reasons the judgment must be reversed and the cause remanded to the district court of

Louisiana, with directions to award a *venire facias de novo.*"

This court said practically the same thing in *Jammie v. Robinson, supra.*

In *Laidlaw v. Organ, supra,* the seller asked for specific information, did not get it, and was deceived. In the *Jammie* case in this court, the vendor knew that the vendee, Jammie, was informed by direct knowledge as to certain representations that had been made to a previous intending purchaser.

In the other cases cited by appellant, including our own, there were either actual misrepresentations made for the purpose of, and intended to, deceive, or concealments, which amounted to the same thing.

In this case, according to the allegations of the affirmative answer, there were neither actual misrepresentations as to the value of the stock, nor concealments which the intending purchaser was bound to disclose. Each party, there being no relation of trust and confidence, was entitled to make the best bargain he could in the purchase and sale of the stock. Appellant made his own offer, not relying upon the letter of December 7, 1925, which respondents accepted and of which they were entitled to the benefits.

The judgment is affirmed.

Tolman, C. J., Askren, Fullerton, and Bridges, JJ., concur.