[No. 15078.   Department Two.   April 28, 1919.]

W. G. WARWICK *et al., Respondents,* v, J. A. CORBETT
*et al., Appellants.*[1]

FRAUD (6-8)—RELIANCE ON REPRESENTATIONS—REPRESENTED PROFITS OF BUSINESS.  Fraud in misrepresenting the profits of a mill business is actionable, although the purchaser made an investigation and obtained advice from others, where he never had an opportunity to test the accuracy of the representations.

TRIAL (141)—VERDICT— SPECIAL FINDINGS — INCONSISTENCY WITH GENERAL VERDICT.  In an action for fraud, a special finding that one of the defendants had not made the promises alleged, is not inconsistent with a general verdict establishing fraud on the part of the other defendant.

FRAUD (23)—ACTIONS—MEASURE OF DAMAGES.  While the measure of damages for fraud in misrepresenting the profits of a mill business traded for plaintiffs' farm is ordinarily the difference between the value of the property transferred and what it would have been if as represented, yet, where such property was deeded back to the defendants and plaintiffs also lost their farm, they are entitled to recover the value of the farm and actual loss attributable to the fraud.

Appeal from a judgment of the superior court for Columbia county, Miller, J., entered May 10, 1918, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for damages for deceit in an exchange of properties, after a trial on the merits. Affirmed.

*Will H. Fouts (A. F. Appleton,* of counsel), for appellants.

*S. A. Keenan,* for respondents.

HOLCOMB, J.—The respondents were the owners of a ranch, and the appellants were the owners of certain mill property, both situated in Columbia county, this state.  On April 1, 1915, the parties hereto entered into

[1]Reported in 180 Pac. 928.

an agreement, the material parts of which are as follows:

"Know All Men by These Presents: That Judson A. Corbett and wife Jane Corbett and Laura B. Corbett, a widow, have agreed to sell to W. G. Warwick and wife Martha Warwick (all of Columbia county, Washington) the Huntsville mill property and water rights and equipment used in connection therewith, for the consideration of twenty thousand dollars, and W. G. Warwick and Martha Warwick have agreed to sell to Judson A. Corbett and wife, Jane Corbett, and Laura B. Corbett, a widow, their farm in sections 8 and 9, Township 9 North, Range 39 E. W. M. for the consideration of $16,500. . . . The said Warwick is to take the said mill property from said Corbett at the agreed price of $20,000, upon which property there is a mortgage for $15,000 given to W. H. Richardson . . . which said mortgage is deducted from said price of $20,000 leaving an equity conveyed to said Warwick of $5,000, and said Warwick and wife conveying said farm land to said Corbetts for the sum of $16,500, upon which there are two mortgages given to J. A. Anderson, one for the principal sum of $3,200 . . . and one for the sum of $1,200 ·. . . making a total of principal sum of said mortgages of $4,400, which leaves an equity conveyed by said Warwick to the said Corbetts of $12,000. . . . To W. G. Warwick is to be delivered the deed and abstract of the mill property above named, together with the sum of $6,600 cash and all interest to be paid on the said Richardson mortgage by the said Corbetts up to the day of such delivery . . . it being understood that the said Corbetts are trading their mill property as described in said deed for the farm property of the said Warwicks, as described in their deed, on the following basis: The mill property at $20,000 less the mortgage of $15,000, with interest paid to date of transfer, and the Warwick property for $16,500 less the amount of $4,400 mortgages, interest paid to date, and the said Corbetts to pay the difference in equities in above properties of $7,100; $500 cash of which has this day been paid by said Corbetts to said Warwick, leaving a bal-

ance due from said Corbetts to be paid at the date of delivery of said instruments of $6,600.''

This agreement was the subject-matter of a complaint thereafter filed by the respondents, the chief recitals of which were that W. H. Richardson, the mortgagee named above, is a cousin of J. A. Corbett; that one J. W. Jessee, made a party defendant, is the manager of the Columbia National Bank of Dayton; that plaintiffs (respondents here), for sometime prior to April 1, 1915, were desirous of moving into the town of Dayton, for the benefit of their children's education, and to that end Warwick was seeking a business of some sort in that place; that thereafter he entered into negotiations with J. A. Corbett, looking to the purchase of a small feed mill, operated by Corbett in Dayton; that Corbett informed the complainant that he preferred to sell the mill at Huntsville (the subject-matter of the foregoing agreement), and represented that as an attractive proposition, but upon the quotation of a price of $25,000 for the Huntsville property, the matter was temporarily dropped; that the Richardson mortgage then on the property was largely for the purpose of exaggerating the value of the mill, which really was not in excess of the sum of $10,000; that, after various negotiations, Corbett proposed a trade of the Huntsville property for the Warwicks' ranch on somewhat different terms than those first proposed for the outright sale of the mill property; the terms were that Corbett would retain the grain warehouse and convey the balance of the Huntsville property for the sum of $20,000, paying plaintiffs the sum of $7,300 in cash, less accrued interest on plaintiffs' mortgages and farm taxes, not exceeding $200; that, relying on the representations of Corbett as to the value and earning capacity of the mill, the Warwicks accepted

this latter proposal and the agreement hereinbefore set forth was entered into.

The complaint further charges that the defendants below then entered into a conspiracy, the gist of which was that, when Warwick came to receive his deed to the mill property, Corbett would represent to Warwick that he, Corbett, would have to pay Richardson $5,000 on the principal of the mortgage, and hence could not pay the $7,300 cash, as agreed, and that, if this were acceptable to Warwick, Jessee, the bank manager, would advance Warwick what money he needed from time to time to buy grain and get the mill started; that this proposal was thereafter made to Warwick, but rejected by him. At the continued solicitation of Corbett, Warwick was induced, it is alleged, to call on Jessee at the bank, who there, it is claimed, agreed to finance Warwick, which promise was fraudulently made to induce Warwick to deed the farm to Corbett in pursuance of the alleged conspiracy; that, in reliance upon Jessee's promise, they then agreed to Corbett's proposal, and some time after vacated the farm and prepared to operate the mill. It is further alleged that, except for an advance of $150, the bank refused to make any further loans to Warwick. Thereafter Corbett, seeing that Warwick was unable to operate the mill, came to him and proposed that he deed back the mill property to Corbett as the mortgage for $15,000 aforementioned would be foreclosed; that Warwick was finally prevailed upon to deed back the mill to Corbett without releasing Corbett from his liability to the Warwicks for the value of the farm. After alleging that the Corbetts have not deeded back the farm, nor paid the Warwicks the value thereof, the complaint concludes with general averments of fraud and prayer for damages in the sum of $13,200. The

answer of the defendants below was practically a general denial.

Upon the trial, the jury found for the plaintiffs below in the sum of $6,000. The jury also found specially, (1) that defendant J. W. Jessee did not promise Warwick that he would finance Warwick in carrying on the mill business; (2) that the value of the Warwick land at the time of the trade, exclusive of the mortgage thereon, was $15,200; that the value of the mill property belonging to Corbett, exclusive of the mortgage, at the time of the trade was $9,200; (3) that Warwick did not examine the mill property before the trade; and (4) that Warwick did obtain advice from other parties than the defendant before making the trade.

On this appeal, the appellants contend, (1) that, where the property is at hand to be examined and full opportunity given for examination and nothing is done to prevent, and no conditions exist to prevent, full examination, and the party undertakes examination, the law will not permit him to say that he relied upon representations as to existent conditions; (2) that it is also the law that, where a person seeks advice upon a subject and is given such advice, he will not be permitted to say that he relied upon representations which were the subject of the inquiry; and (3) that the measure of damages is not the difference in value of the properties as the jury found, but it is the difference in value of the property purchased at the time of the purchase and the value of the property had it been as represented or agreed, but not exceeding the agreed valuation; that, in this case, the agreed valuation of the mill property was $20,000, and that, the jury having found that the property, inclusive of the mortgage, was worth $19,200, the respondents would only be entitled to $800 damages.

As to the first two contentions of the appellants, this court has held in various cases that false representations as to the value of a business, and as to the profits derived therefrom, peculiarly within the knowledge of the seller and inducing the sale, may be relied upon by the purchaser, notwithstanding the purchaser may have made a physical inspection of the property. *Sowles v. Fleetwood,* 97 Wash. 166, 165 Pac. 1056. This court has also held:

"Ordinary prudence does not require a person to test the truthfulness of representations made to him by another as to his own knowledge with the intent that they shall be believed and acted upon, even though the party to whom such representations are made may have an opportunity to ascertain the truth himself. Such is the law as established by the overwhelming weight of authority." *Christensen v. Koch,* 85 Wash. 472, 148 Pac. 585.

See, also, *Gordon v. Hillman,* 91 Wash. 490, 158 Pac. 96.

In this case, Warwick never had the opportunity to test the representations of Corbett as to the profits of the business, for he never actually had the business started; as the evidence shows, he was not financially able to begin the operation of the mill, and although in answer to an interrogatory the jury found specially that defendant Jessee had not made any promise to finance Warwick, still, their verdict proper must be held to have established that Warwick, on the whole, was fraudulently and wrongfully induced by Corbett, who was found liable, to embark upon a vessel for whose sails there was no possibility of wind. This is not such a conflict between a special finding and a general verdict as to bring it within the rule enunciated by this court that, where conflict exists between a general verdict and a special finding, the special

finding will be held to govern, for the special finding is practically a separate verdict releasing Jessee, who was not included in the general verdict, and was therefore discharged from the case.

As to appellants' third contention, that the measure of damages applied in this case was incorrect, while the law, as stated in *Parkhurst v. Elliott,* 103 Wash. 89, 173 Pac. 731, is that the measure of damages is the difference between the value of the property transferred at the time of the sale and what its value would have been, if as represented, still, in the instant case, the plaintiffs below were also entitled to recover the value of their farm and to be reimbursed for actual loss directly attributable to appellants' fraud. *Eyers v. Burbank Co.,* 97 Wash. 220, 166 Pac. 656.

We cannot say that the verdict of the jury is clearly against the evidence as adduced, nor that the measure of damages found by them is excessive. The judgment thereon will be affirmed.

CHADWICK, C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.