### STEPHENS *v.* BOND *et al.*

PER CURIAM. 1. The court did not err in overruling the demurrer to the petition as amended.

2. The only other question before this court is, did the court err in directing a verdict for the plaintiffs under the evidence? The only matter of dispute between the parties was, who was at fault in the performance of the terms of the contract? The plaintiffs alleged that the defendant was at fault in insisting upon the payment by them of an incumbrance on the land which they had not assumed. The defendant contended that the plaintiffs were at fault in refusing to pay an incumbrance upon the land which they had assumed and agreed to pay. While this was in dispute between the parties, the fact of rescission by both parties was clear, undisputed, and admitted. Even if the defendant did not undertake to rescind the contract, the plaintiffs expressly rescinded the contract and abandoned the premises; and the defendant accepted such abandonment, took possession of the premises, and began to cultivate the lands as his own, thus impliedly, if not expressly, agreeing to the rescission. Rescission being thus undisputed, the defendant was required to restore the vendees to the position in which they were at the date of the contract of purchase. The vendor could not rescind or accept rescission by the vendees, without restitution. Under this state of facts, it not appearing from the pleadings or the evidence that the vendor was entitled to any rent or damages from the vendees, the vendor was liable to the vendees for the amount of money which they had paid on the purchase-price of this land. Being so liable, the court did not err in directing a verdict in behalf of the plaintiffs for this money, the undisputed facts demanding this verdict.     *Judgment affirmed. All the Justices concur.*

No. 3069. FEBRUARY 13, 1923.

Equitable petition. Before Judge Worrill. Early superior court. February 4, 1922.

In August, 1919, J. A. Stephens entered into a contract by which he agreed to sell to A. J. and J. W. Bond land for the sum of forty thousand dollars, and the vendees paid to the vendor at that time three thousand dollars in cash and executed their note. The vendor executed a bond for title on the same day, the condition of which was " That whereas the said obligee has this day made and delivered to the said obligor one certain promissory note for the sum of twenty-nine thousand and no/100 dollars, to become due as follows: January 1st, 1920, and to assume payment of $8,000.00 notes due Pearsons-Taft Loan Credit Co., with interest from January 1st, 1920, said notes being due in 1929. Now, should the said obligee well and truly pay said promissory note, then the obligor binds himself to make or cause to be made to said obligee, or his assigns, good and sufficient titles, in fee simple," to the land described therein. On the trial certified copies of the notes for $8000.00 and for $1500.45 were introduced, as follows: " On the first day of February, A. D. 1929, for money loaned, I promise to pay to the order of Pearsons-Taft Land Credit Company, of Chicago, Illinois, eight thousand dollars, at its office in Chicago, Ill., with interest from Sept. 5, 1918, payable annually, at the rate of 6 per cent. per annum, which is evidenced by interest notes hereto attached. This note is secured by a warranty deed made by Jas. A. Stephens to Pearsons-Taft Land Credit Co., conveying real estate in Miller County, Georgia, and bears interest at the rate of 8 per cent. per annum after due until paid. But should default be made in the payment of the interest, at the time or in the manner above specified, the whole sum of principal and interest remaining unpaid shall, at the option of the owner and holder of this note, immediately become due and payable. This note is to be construed according to the laws of Georgia. The maker of this note reserves the right to pay $500, or any multiple thereof, February 1, 1920 to 1929. All payments made to be endorsed on the principal note, and coupons for subsequent accruing interest to be proportionately reduced in amount." The note for $1500.45 was dated Sept. 5, 1918, and stipulated for the payment of " sixty and 45/100 dollars on the first day of February, 1919, and one hundred and sixty dollars on the first day of each February thereafter, until the whole amount is paid, with interest on each installment at 8 per cent per annum after due until paid."

This note also contained the following: "READ CAREFULLY. The maker of this note understands that it is given in lieu of a cash commission, and expressly agrees that on default in the payment of any of the above installments, or on payment under option of the indebtedness secured by the prior deed referred to in the deed securing this note, all of the installments hereof shall, at the election of the holder hereof, become at once due and payable."

On January 2, 1920, (the first day of January being Sunday) the parties met to complete the transaction agreed upon. The vendees stated to the vendor that they had discovered that an additional encumbrance of $1500.45 was outstanding on the land, which fact had been concealed from them by the vendor and was not known to them at the time the contract was agreed upon, and accordingly insisted that the vendor should pay off this additional encumbrance, or permit them to do so and to deduct it from the balance due by them to the vendor, the vendees then and there tendering to the vendor the balance due under the contract, less the amount of the encumbrance, $1500.45. The vendor refused to pay off the last-named encumbrance, or to permit the vendees to deduct the amount thereof from the balance due under the contract between them; whereupon the vendees refused to pay the balance due under the contract without the deduction claimed, and the vendor refused to execute a deed to the vendees without the payment on the part of the vendees of said additional encumbrance. In the suit filed by the vendees against the vendors, the facts above stated in regard to the contract of purchase and sale of the land were alleged; copy of the bond for title was attached as an exhibit; and they prayed for recovery of the three thousand dollars paid by them to the vendor, with interest, for the cancellation of their note made payable to the vendor, for attorney's fees, for a special lien on the land, for process, and for general relief. The petition also alleged a tender into court, and an offer to deliver up to the vendor his bond for title. The defendant demurred generally and specially to the petition. He answered, denying that he had refused to execute a deed to the vendees in accordance with the terms of the contract, and alleging that he had always been ready and willing to deliver said deed in compliance with the terms of the bond for title. He prayed for a judgment for the balance due him, as evidenced by the promis-

sory note of the vendees, together with interest and attorney's fees; and tendered into court a deed to the land. The special demurrer was interposed to the tenth paragraph of the petition, which alleged bad faith on the part of the defendant, on account of which the plaintiff based a claim for attorney's fees. The plaintiffs amended this paragraph for the purpose of meeting this demurrer. The verdict did not include the recovery of any attorney's fees. After the amendment to the petition in response to the special demurrer, the court rendered a judgment overruling each and every ground of the demurrers, general and special.

On Sunday, January 1, 1920, the vendees, together with some of their employees and personal property, arrived at the residence of the vendor on the land in question and spent the night there. The next day the parties met in Donalsonville, where the disagreement mentioned above occurred. Immediately upon the disagreement the vendees moved off the place and abandoned it to the vendor, who continued to hold possession thereof until the time of the trial. In regard to his possession the vendor on the trial testified as follows: "When the two Mr. Bonds left the place on the night of January 2nd, 1920, and moved their stuff away from there, I didn't think they would ever return. I didn't know it. I cannot say for certain that I knew they were never coming back. They were moving, and I thought by that they were gone. The place was vacant then, except the hands they had on the place. One of these hands was T. J. Hill. It was along about the 1st of February, 1920, after the Bonds left, before I made arrangements with Mr. Hill to represent me on the farm. With the exception of the hands Mr. Bond left there, the place was vacant. I told the hands after I saw the Bonds were not going to do nothing about it; I told them to go ahead like they were. That was about the 1st of February, 1920. I went in and took possession of the place. At that time the Bank of Donalsonville held a promissory note from the Bonds, payable to me, for $29,000. I guess the note was in my possession. I had there $3000 in my possession at that time. My bond for title was outstanding. I have been in possession of the place ever since I took it back."

The court directed a verdict for the plaintiffs, finding that there had been " a rescission of the contract for the sale of the lands described in the petition, and that plaintiffs do recover of and

from the defendant the $3,000 of the purchase-price paid by them to defendant, with interest thereon at 7% from Feb'y 15, 1920, and that the $29,000 note and the bond for title mentioned in the petition be surrendered for cancellation." The defendant moved for a new trial, which was denied. He excepted to this ruling, and assigned error on the overruling of the demurrers.

*W. I. Geer, W. G. Park,* and *Glessner & Collins,* for plaintiff in error.

*Titus & Dekle* and *Pope & Bennet,* contra.