[No. 23276.   Department Two.   May 16, 1932.]

DOROTHY FRAHM, *Respondent,* v. ALMA V. MOORE *et al.,*
*Appellants.*

WATSON-MOORE COMPANY, *Appellant,* v. DOROTHY
FRAHM, *Respondent.*[1]

*Roberts, Skeel & Holman* and *Tyre H. Hollander,*
for appellants.

*Bausman, Oldham, Walkinshaw & Jarvis* and *Hart
Snyder,* for respondent.

[1] Reported in 11 P. (2d) 593.

BEALS, J.—May 5, 1930, and within two weeks after entering the employment of Alma V. Moore, proprietor of Green Gate Coffee Shop No. 2, in the city of Seattle, the plaintiff, Dorothy Frahm, purchased the restaurant from Mrs. Moore at the agreed purchase price of $6,-000, of which $1,000 was paid in cash. Plaintiff gave her promissory note for the balance, payable $250 per month, secured by a chattel mortgage upon the fixtures and equipment. On the date of sale, possession of the restaurant was delivered to plaintiff, who operated the establishment until the latter part of August following; when, after she had been served by her landlord with a notice to quit or pay rent, plaintiff notified defendants Moore that she elected to rescind the sale because of alleged fraudulent representations; after which possession of the premises was assumed by Watson-Moore Company, and, as we hold, by defendants.

Plaintiff thereafter sued Alma V. and John R. Moore, seeking a rescission of the contract to purchase the restaurant and judgment for the return of the money which she had paid on account of the purchase price thereof, amounting to $1,250, together with damages which she claimed she had sustained by reason of misrepresentations made to her by and on behalf of defendants. Mrs. Moore filed a cross-complaint, asking for judgment on the $5,000 note and foreclosure of the chattel mortgage.

Watson-Moore Company, a corporation, at the same time instituted suit against Miss Frahm, seeking recovery on account of rent for the premises in which the restaurant was located. By stipulation, the two actions were tried together.

The trial court, in the action instituted by Miss Frahm, rendered a decree in her favor, rescinding the sale, awarding her judgment for $1,250, being the

amount which she had paid on account of the purchase price of the restaurant property and denying to the defendants in that action any relief on their cross-complaint, holding that Mr. and Mrs. Moore had acquiesced in Miss Frahm's rescission of the contract. In the action for rent, the court granted Watson-Moore Company a decree for $53.85, and established the same as a lien upon certain personal property and equipment therein described.

Alma V. and John R. Moore appeal from the decree rendered against them in the suit brought by Miss Frahm, and Watson-Moore Company appeals from the decree rendered in its favor in the action for rent, contending that judgment should have been rendered in its favor for a larger amount. By stipulation, the causes have been consolidated for hearing in this court, and we shall first consider the appeal taken on behalf of Mr. and Mrs. Moore.

The appellants on this appeal contend that the trial court erred in decreeing a rescission of the sale; in entering judgment in favor of Dorothy Frahm (who will hereinafter be referred to as the respondent) for $1,250, or for any amount; in canceling the note and chattel mortgage given by respondent as security for the balance of the purchase price; in dismissing the cross-complaint of appellant Alma V. Moore seeking judgment on this note and foreclosure of the chattel mortgage securing the same; in refusing to admit testimony offered by appellants; and in denying their motion for a new trial.

It appears from the evidence that, prior to July 1, 1929, appellant John R. Moore purchased the restaurant fixtures and equipment at 204 Marion street, Seattle, the premises here in question, and that shortly thereafter, his wife, appellant Alma V. Moore, who had

theretofore been conducting at another location a restaurant known as Green Gate Coffee Shop, commenced to operate the Marion street premises as Green Gate Coffee Shop No. 2.

It is earnestly contended that the last mentioned business, because of certain dealings between Mr. and Mrs. Moore, and because of her investment therein of money which she had received from her father, became her separate property, and that the trial court erred in holding that the restaurant was the community property of Mr. and Mrs. Moore. Examination of the evidence convinces us that the trial court did not err in this ruling, and that, if the record shows that respondent is entitled to return of the money which she paid on account of the purchase price of the restaurant, the judgment properly runs against Mr. and Mrs. Moore as a marital community.

It appears that, under Mrs. Moore's management the restaurant prospered, and was well patronized by persons employed in the vicinity. Respondent, who was about thirty years of age, of German birth and education, had resided in Seattle for about six years, and, without experience in business other than that obtained as cook in private families, entered Mrs. Moore's employ as salad maker in Green Gate Coffee Shop No. 2. Learning that the coffee shop was for sale, respondent informed Mrs. Moore that she might consider buying the place, and the matter was thereafter discussed between the parties.

Respondent took the matter up with Miss Valerie Campbell, who was managing shop No. 2 for Mrs. Moore, and received from Miss Campbell certain information as to the earnings of the coffee shop and the expenses of operation thereof. Respondent also sought the advice of her friend, Mr. Thomas E. Driscoll, with

whose family respondent was well acquainted, and Mr. Driscoll made some investigation of the situation, and advised respondent not to make the purchase. Notwithstanding this advice, respondent did buy the restaurant, which, not long thereafter, ceased to produce sufficient returns to pay the expenses of operation thereof, with the result that respondent fell behind in her rent; and, when payment thereof was demanded by her landlord, she abandoned the business, as above stated.

Appellants argue that respondent was temperamentally unfitted to successfully conduct such a business, and that the failure of the restaurant to pay expenses was due to this cause, as well as to respondent's inexperience, her inability to get along with her employees, and her lack of tact in meeting her patrons. Granting that some of these contentions of appellants may have some support in the testimony, we hold that the judgment of the trial court is supported by clear, cogent and convincing evidence, and that respondent's right of recovery should not be defeated, in view of the evidence, because of her inexperience or temperament.

Had respondent been told the truth, she might not have bought the business. If actionable misrepresentations were made to respondent before and at the time of her purchase of the coffee shop, she has a right of action thereon, even though her venture might have been unsuccessful had she been told the truth and bought the business after a complete understanding of the true situation. The question is not, could respondent have successfully conducted the coffee shop, but, was she induced to purchase the same by false representations, made with knowledge of their untruth, and upon which respondent had the right to rely.

Respondent testified positively that both Mrs. Moore and Miss Campbell told her that the gross income earned by the restaurant amounted to $150 a day for the six days a week that the restaurant was open. Miss Campbell admits that, when she and respondent were discussing the matter, she (Miss Campbell) made upon a piece of paper certain figures indicating the operating expenses, the business done, and the profits to be realized therefrom, in which she based her demonstration on the assumption that the restaurant took in $150 per day. Miss Campbell also on this memorandum estimated the weekly payroll at $150, whereas in fact it exceeded that amount. This memorandum is in the record, and entirely supports respondent's contention.

Miss Campbell contends that, at or approximately the same time, she made other figures on another paper in which she assumed the restaurant took in $100 a day, gross. Why the witness would have made two sets of figures is not explained, and we deem the memorandum above referred to important in determining the issues presented in the rescission case. Miss Campbell sought to justify her figures by contending that they did take in as much as $150 a day, which may occasionally have happened, but the average gross receipts were certainly considerably less than that amount.

Respondent testified that she asked to see the books, but that the same were never exhibited to her. She also testified that she asked certain of the employees as to the amount of their wages and failed to receive from them the information she sought.

While respondent would have done better had she taken Mr. Driscoll's disinterested advice and given up her idea of purchasing the coffee shop, we are satisfied,

as was the trial court, that representations were made to respondent by Mrs. Moore and Miss Campbell which were, in fact, untrue, and which, being representations of existing facts, respondent was entitled to rely upon in purchasing the property. The trial court had the advantage of hearing and observing the witnesses, and its judgment on disputed questions of fact is entitled to great weight.

It is true that the parties were dealing at arm's length, and that a seller may praise that property which he has to sell. Under such circumstances, courts will not too closely scrutinize representations which are manifestly matters of opinion only, but such representations as to existing facts as were made to respondent, by persons who knew the actual situation, come within a different category, and when untrue, unless contradicted by other facts open to observation, entitle the person misled to relief. *Thomas v. Moore,* 105 Wash. 293, 177 Pac. 734; *Champneys v. Irwin,* 106 Wash. 438, 180 Pac. 405; *Warwick v. Corbett,* 106 Wash. 554, 180 Pac. 928; *Sherrin v. Gevurtz,* 142 Wash. 128, 252 Pac. 683.

Appellants offered testimony concerning the value of the furniture, fixtures and equipment sold to respondent, which testimony the court rejected. The trial court allowed respondent no damages, but awarded her merely the return of the money which she had paid. The testimony offered, if the same had been received, would not have changed the result, as we hold that the record contains evidence which convinces us that false representations were made to respondent, both as to the gross income earned by the coffee shop and the expenses of operation thereof. For this reason, respondent was entitled to rescind the sale and recover what she had paid, and the value of

the fixtures and equipment conveyed to her, within the limits of the testimony offered, is not important.

If, under the pleadings, the trial court erred in rejecting the testimony, in view of the decree entered and our opinion on the evidence, the error was without prejudice.

We are satisfied that the judgment of the trial court in respondent's favor, awarding her the return of the money which she paid on account of the purchase price of the coffee shop, is supported by the preponderance of the evidence.

We also agree with the trial court in holding that appellants Moore accepted the rescission of the contract made by respondent. The premises and restaurant equipment were, shortly after respondent surrendered possession thereof, leased by Watson-Moore Company to another party, and we are satisfied that appellants Moore, by their knowledge of this transaction and their acquiescence therein, elected to accept the rescission of the contract between appellant Alma V. Moore and respondent, and that Mrs. Moore thereby lost any right which she might have had to foreclose her chattel mortgage.

It clearly appears from the testimony given by Elizabeth Boulton, an employee of Watson-Moore Company, that Mrs. Moore was fully advised as to the lease of the property to the new tenant. Miss Boulton at first denied that she had discussed this matter with Mrs. Moore, but later admitted that she had done so, claiming that her conversations with Mrs. Moore were purely "social," and that she had no "business conversation" with her concerning the matter. Mrs. Moore's husband was one of the officers of Watson-Moore Company, and we are satisfied that any conversations between Miss Boulton and Mrs. Moore were business conversations, assuming (which we do not be-

lieve) that, under any circumstances, a distinction could be drawn between information conveyed in a social conversation and one which was in its nature strictly concerning business. In this connection, appellants' conduct is, of course, considered together with all the evidence in the case and with the relief granted by the trial court.

Upon the question of acceptance of rescission by appellants Moore, the following authorities are in point: *Pardoe v. Jones,* 161 Iowa 426, 143 N. W. 405; *Stephens v. Bond,* 155 Ga. 20, 115 S. E. 913.

We find no error in the decree of the trial court entered in favor of respondent in the rescission action.

We shall now consider the appeal of Watson-Moore Company, that appellant contending that the trial court should have granted a decree for a full month's rent in the sum of $250, together with a lien therefor, instead of for the lesser sum, as hereinabove set forth. The rent for the restaurant property was $250 a month, respondent claiming that Mr. Moore, on behalf of Watson-Moore Company, had orally agreed to accept as monthly rental, from and including the month of August, ten per cent of the gross receipts of the business. The trial court found that this oral agreement had been made, and awarded appellant judgment for $53.85, being ten per cent of the gross receipts of the coffee shop for the month of August.

The burden rested upon respondent to prove, by the preponderance of the evidence, the oral modification of the lease, which she contended had been made. On behalf of appellant, Mr. Moore testified that, when respondent complained she could not pay the rent, he told her to turn in on account thereof ten per cent of her gross receipts, to be applied on the rent due under the lease. Careful examination of the testimony of the

respective parties on this issue satisfies us that the testimony preponderates against respondent's contention. Her own testimony is not clear, and is easily reconciled with that of Mr. Moore, the differences being easily accounted for by respondent's lack of business experience and her unfamiliarity with the English language. We accordingly hold that the trial court erred in awarding appellant Watson-Moore Company less than the $250 which it claimed.

On the appeal of appellants Alma V. and John R. Moore, the decree against them is in all things affirmed. On the appeal of Watson-Moore Company, a corporation, the decree in its favor for $53.85 is modified by increasing the same to $250. As appellants joined in making their record in this court, appellant Watson-Moore Company will be allowed, as against the respondent, one-half of the usual costs allowed in this court, and will tax against respondent the statutory attorney's fee. Respondent will be allowed, as against appellants Moore, one-half of her costs, and will tax against them the statutory attorney's fee.

TOLMAN, C. J., MILLARD, HOLCOMB, and MAIN, JJ., concur.