[No. 30686.   Department One.   November 23, 1948.]

I. S. WEAVER *et al., Respondents,* v. HERMAN F. BLOCHBERGER *et al., Appellants.*[1]

[1]Reported in 199 P. (2d) 589.

*Ralph M. Rogers,* for appellants.

*Louis J. Muscek,* for respondents.

MALLERY, C. J.—The defendants had offered a small community store, located at 1006 north I street in the city of Tacoma, for sale through the Harold A. Allen & Co. firm of real-estate brokers. Mr. Hugh Fotheringill handled the negotiations here involved for them. About July 7, 1947, he took the plaintiff Weaver, a young ex-serviceman without previous business experience, to the store and introduced him to the defendant Mrs. Blochberger, and, on July 12th, an earnest-money receipt for the sale of the business was executed. The deal was consummated September 15, 1947. It consisted of a lease of the premises for five years at sixty dollars a month, together with a conditional bill of sale of the fixtures and stock of goods on hand.

Plaintiffs went into possession September 15, 1947. They paid the first and last month's rent and again paid the rent due on October 15th. They operated the store until October 29th, when they caused to be served on defendants a written notice of rescission of the transaction and offer of restoration of the property. This offer was refused in writing by defendants, and, on November 3rd, the plaintiffs closed the store and locked it up. This action for rescission and restoration followed. It is based upon fraudulent representations made to the plaintiffs to induce them to make the deal.

The first cause of action is for a recovery of the purchase price of the fixtures; the second for the recovery of moneys paid for the stock of merchandise; and the third for rescission of the lease. There is no dispute as to the prices involved, excepting as to the value of the inventory that was turned back by the plaintiffs.

The plaintiffs alleged and proved that the defendant Mrs. Blochberger had represented to the plaintiffs that she had banked four hundred dollars in profits from the business for the month of August, and that she had further represented that the profits had exceeded twenty dollars per day. She told Mrs. Weaver that they could make that much in the operation of the store. She claimed that there were no bookkeeping records which she could show to demonstrate the extent of the business to them, and, on the trial of the case, the scattered papers she produced drew the comment from the trial court that they were of little value for such a purpose. The period of operation of the store by the plaintiffs had shown a profit of about four dollars a day. The trial court found that there was fraud and granted judgment to the plaintiffs, from which the defendants appeal.

Seventeen of appellants' assignments of error which are directed to the findings of fact and conclusions of law need no comment other than that they are not supported by the record.

The complaint alleged that appellant Mrs. Blochberger had made a representation that she had banked a profit of four hundred dollars for the month of August. The allegation of this misrepresentation was one of the chief ones relied upon by the respondents to show fraud. Appellants contend that the court erred in admitting testimony to the effect that Mrs. Blochberger had, at other times, made representations that she had banked four hundred dollars profits for the months of June and July also. They contend that this was prejudicial error. We find no merit in this assignment of error. Complaints allege ultimate facts and not the detailed evidence to be introduced at the trial. The probative value of the testimony complained of is confessed by the appellants by their contention that it was prejudicial. Its competency and relevancy is supported upon the theory of it showing similar acts for the purpose of showing intent to deceive.

The representations as to the profits appellants had derived from the business were false. They took the position that such representations as were made referred only to

gross income, which is a very different thing from profits. They made no attempt to prove they had made a profit of four hundred dollars per month. The record amply supports the court's finding against them in this regard.

■ Appellants' elaborate argument as to the elements necessary to prove fraud are not in point here. If such false representations as to previous profits are relied upon and induce one to buy a business that cannot be made to pay a comparable amount, an action for rescission based upon fraud will lie. See *Frahm v. Moore,* 168 Wash. 212, 11 P. (2d) 593, which the trial court followed, and which lays down the rule applicable in this case.

■ The respondents did not have sufficient cash to make the full down payment asked by the appellants. Since the appellants were to have paid the realtors' commission out of the down payment, this problem was solved by the realtors accepting their commission in the form of a promissory note made by the respondents, thus enabling the appellants to keep the full amount of the down payment. Touching this situation, the appellants make two assignments of error.

First, they contend that the respondents have no right to recover the amount represented by the promissory note, because they have not yet paid it. Such a contention is untenable, unless it is coupled with proof that the obligation is not binding and need never be paid by the respondents. They did not so contend, and hence this assignment of error fails.

■ Secondly, they contend that the court erred in sustaining objections in cross-examination to their attempt to show that the realtor, Mr. Fotheringill, had an interest in the outcome of the action because of his holding respondents' promissory note, which would affect his credibility. Appellants' extensive citations as to the right to show an interest in the outcome of an action to affect the credibility of a witness, are all sound law, but they have no bearing on the instant case. The holder of a note of a party to an action has no interest in the outcome of the case simply by such fact alone. To constitute an interest, it must be shown that the payment of the obligation was contingent upon the out-

come of the action. This is not suggested by the appellants, and hence this assignment is without merit.

■ The respondents testified that their profits while running the business amounted to about four dollars a day. The appellants assign the admission of this testimony as error, contending that evidence of profits made after taking over the business is incompetent to show the falsity of the appellants' representations as to the amount of profits derived from the business at a prior time. We find no merit in this contention. The possible earnings of the business are the chief bone of contention in this case. It was necessary to show that the business did not make the profits represented, and that they could not be made. The evidence had a bearing upon both of these questions and was therefore admissible.

■ The respondents testified that the inventory of the stock on hand had been kept up during the time they operated the business. While their records were little, if any, better than those kept by the appellants, the evidence was competent to make a *prima facie* showing as against the objection that it was incompetent, irrelevant, and immaterial. The reception of the evidence was not error.

■ The appellants elected not to rebut the respondents' showing that the inventory had been kept up, and rested their case without offering any testimony on that question. Some time after the court had indicated that judgment would be given for the respondents, the appellants sought to reopen the case to permit such belated rebuttal, but the court in the exercise of its sound discretion refused to receive further testimony.

■ After the trial, the appellants asked the court to appoint appraisers to make an inventory. This the court did, and an inventory supported by affidavits of the court's appointees was returned into court. It showed, generally, that the inventory to be turned back to the appellants was in the amount of $1,009.49, which was less than the value of the inventory originally received by the respondents. The court accepted the inventory, as returned by the appraisers, and entered judgment for the lesser amount.

The appellants contend that this was error, and that the inventory should have been stricken on their motion, because they were not permitted to cross-examine the persons taking the inventory. We are wholly unable to understand what advantage the allowing of this assignment of error could be to the appellants. They elected not to introduce testimony on the subject. They were properly refused permission to reopen the case. To strike the inventory now would merely reinstate the *prima facie* showing of the respondents that the inventory had been kept up, which would increase the amount of the judgment. This would hardly be to appellants' advantage. If it was error, it was not prejudicial to them.

Appellants contend that the offer of respondents to surrender the store, goods, and fixtures, at the time of their notice of rescission, was not made in good faith. Since the appellants promptly and conclusively rejected the offer in writing and have shown no subsequent demand for possession or any refusal to restore possession after the store was locked up, we think they are not in a position to question respondents' good faith.

They contend that they were entitled to be paid the rental during the period following the notice of rescission and offer of restoration up to the time they re-entered the premises. The appellants refused to retake possession at the time of the notice at their peril and must abide the result of the judgment against them. "Where the purchaser having grounds for rescission abandons the land, he is not liable for rents thereafter." 66 C. J. 843, § 512.

The judgment is affirmed.

BEALS, STEINERT, JEFFERS, and HILL, JJ., concur.