[No. 23895. Department One. December 27, 1932.]

I. DAVIS *et al., Respondents,* v. F. C. BAYNE *et al.,*
*Appellants.*[1]

*McMaster, Hall & Schaefer* and *James Walter Redden,* for appellants.

*David Robinson* and *Bates & Burnett,* for respondents.

[1]Reported in 17 P. (2d) 618.

HOLCOMB, J.—Respondents sued appellants to recover ten thousand dollars damages, alleging that appellants had fraudulently represented to respondents the laundry known as the Washington Laundry in Vancouver as having earned a profit before depreciation for the first ten months of 1928, of $4,240.74; that the laundry had theretofore been a prosperous business for some years, earning a large income, and that appellants desired to sell because of dissension among themselves; that appellants. Bayne, Ringer and wife falsely and fraudulently represented to respondents that the current unpaid bills would not exceed six hundred dollars on October 1, 1928; that the books of the company reflected its true financial condition; and that these representations were relied upon by respondents in purchasing the stock of the company; and that the representations were false.

Appellants denied the allegations of misrepresentation and fraud, and by cross-complaint sought judgment on three unpaid notes, together with reasonable attorney's fees and interest as therein provided.

The case was tried before the court without a jury, which allowed respondents the full amount prayed for as damages, allowed as an offset against that judgment of principal only of the unpaid purchase price notes, denied appellants any interest whatever on the notes, and also denied them attorney's fees as provided by the notes. From that judgment, this appeal is brought.

The agreed consideration for the purchase of the laundry was $37,000, of which, by the contract of purchase, dated November 30, 1928, respondents assumed and agreed to pay indebtedness to the extent of $18,000; and if the indebtedness of the company exceeded $18,000, such excess was to be credited on the notes for the unpaid purchase money given by respondents. A

series of promissory notes, each in the sum of $1,500, with varying maturities, were executed by respondents, three of which notes were unpaid at the time they commenced their action.

I. Davis, one of respondents, is the father of the other respondent. They lived in Portland, Oregon, at the time of the transaction in question. He had been a resident of the United States for twenty-four years, during all of which time he was engaged in the laundry business, the first three years, after emigrating from Europe, as an employee in New York, and thereafter as an owner. He first started a small laundry, and then bought a large one that had forty employees. He did not make a success of that, lost everything, and then came to Portland, about nineteen years prior to purchasing the Washington Laundry.

In Portland, he first started a laundry, built it up into a nice business, and about three years later bought another laundry from the receiver thereof at a time when it was not making, but losing, money. He ran that laundry for about ten years, made a lot of money, sold it, and bought another laundry at a time when it was not making any profit, but after a time he made it produce a profit. He lost that laundry in a fire, but in the two months before the fire had made $1,800 in net profits. After the fire, he came to Vancouver to negotiate with appellants to see if he could not buy their laundry. Some of the laundries he had owned during that time were much larger than the Washington Laundry.

He first came alone to Vancouver, approached appellants, and was informed by appellant Ringer that the laundry had made a profit of over $4,000 during the year. He was shown two statements, one concerning the machinery, which he said Ringer advised him he could keep, the other regarding the profits, which

4

Ringer did not want him to keep, but wished returned; he, therefore, gave back the statement to Ringer and saw it no more. At the time of the discussion about the profits, nothing was said about depreciation, it merely being stated that the profits for the period of time referred to were as above stated. There was also an allegation in the complaint to the effect that the profits so misrepresented were represented to be the profits before depreciation was charged against the plant.

He and his son made an inspection of the plant, which did not take long, and they noticed that the place looked like it was not in good order, things were dirty, and it did not look like a well managed concern or "interesting to buy"; that, on that visit, he informed appellants he would send over his auditor to examine the books and "try if it was correct with their statement" when the accountant should give him an answer. His accountant went over on a certain Monday, returned to Portland, and reported to respondent the next day, giving respondent his report. He testified that the report showed the $4,000 profit, but that the auditor told him he was paying too much for the place if he was paying $40,000. He decided to go ahead with negotiations anyway, and his son went over the customers' route for a couple of weeks, and reported to his father that it was a good business. He further testified that the auditor had been his auditor for some years, was the certified expert accountant who had also audited the books of another laundry before respondents purchased it.

McRae, the expert accountant employed by respondents to examine the books of appellants, testified that for twelve years he had been a certified public accountant, who made a specialty of laundry accounting; that he had been employed for some time by respondents,

had examined the books of other laundries before respondents purchased them; that he went to Vancouver at the request of I. Davis, made an examination of the books and records of appellants pertaining to the operation of the Washington laundry; that he spent about three and one-half hours going over the records, which time was spent examining them.

When he went to the laundry, he met appellants, and told them he was a certified accountant representing Davis, and wished to examine the records; he asked for the general ledger, inquired the method of keeping the accounts receivable; that they showed him these books, and that he spent some time there copying the records, ascertaining the method of charging up business to the drivers, checking some of those books as a test against the trial balance on the work sheets of the system at that time to see if it was regular. He also testified that the apparent net profit for ten months' operation of the laundry to October 31, 1928, of $4,240.74 did not include any depreciation on the general ledger; that such condition was apparent by casual inspection.

He admitted that it was not customary to charge depreciation off monthly, but at the end of the year. According to his testimony, good business accounting of such a plant and business would charge a depreciation for the ten months period of $1,879.20, which should have been charged against the so-called profit of $4,240.74. This would, of course, reduce the apparent net profit to $2,361.54. It is thus manifest that there was no misrepresentation as to the depreciation, as it was not to be charged up until the end of the year.

Including the item for depreciation, other items which respondents claimed should have been charged off to show the true net profit, aggregating $4,022.96 for the ten months to October 31, 1928, comprising

plant wages and drivers' wages, which were either on the books as unpaid October 31, or were charged up at the end of the year, which occurred after October 31; $309.15 represented interest which had accrued on two loans to a savings and loan association, of which loans he had been informed; $260.00 on the books of appellants as notes receivable, in fact constituted an unexpended balance of the loans from the building and loan association; accounts payable aggregating $1,274.76, not then shown on appellants' books, but which fact was clearly apparent; and the last half of the taxes amounting to $56.09.

Such of these sums as were not shown on the books, if not paid before delivery of the property and business, were plainly within the contemplation of all parties, as deductible from the unpaid purchase money.

Most of the controversy waged around the alleged misrepresentation of the $4,240.74 profit up to October 31, 1928.

The trial judge in rendering his decision stated that,

"Where one makes a statement of fact upon which another depends and that statement of fact is not true and the one who makes the statement is ignorant as to its truth, then there is no question but that the maker of the statement is guilty of a legal fraud."

With due respect to the trial judge, the rule he stated is not without exceptions. The trial judge correctly stated the rule in force in this state, that fraud is never presumed but must be proven by evidence that is clear, cogent and convincing. Respondents cite, and the trial court probably relied upon, *Christensen v. Koch,* 85 Wash. 472, 148 Pac. 585, and *Champneys v. Irwin,* 106 Wash. 438, 180 Pac. 405, of our cases, and 12 R. C. L. 357, to the effect that

"The mere fact that one makes an independent investigation or examination, or consults with others, does not necessarily show that he relied on his own

judgment, or on the information so gained, rather than on the representations of the other party, nor does it give rise to a presumption of law to that effect. If under the circumstances he was unable to learn the truth from such examination or investigation, or without fault on his part did not learn it, and in fact relied on the representations, then he is entitled to relief.''

In the *Champneys* case, *supra,* we reiterated our rule that, where facts are peculiarly within the knowledge of the vendor and difficult of ascertainment by the vendee, the vendee who relies on the vendor's word is entitled to rescind for misrepresentation as to material facts, although he may have made some investigation on the subject matter of representations. Such was not the situation in the present case.

It is apparent from our statement of the facts that respondents knew as much about laundries and their methods of operation and of keeping their books, as did appellants. It is evident that they did not rely upon the statements, but employed an accountant, in whom they had all confidence and had employed many times before, to examine the assets and books of appellants to ascertain whether the profits for the ten months of 1928 up to October 31, were over $4,000. This accountant was either entirely competent and found all the facts comprising the items heretofore mentioned, or was utterly incompetent and did not find them. At any rate, he was relied upon by respondents to discover the facts relating to the business and profits of the laundry. Having a trusted relation with respondents, it is to be presumed that he reported the true facts relating to the business to his employers. Neither his employers nor he could thereafter say that such facts as were apparent or easy of ascertainment upon inspection of the books and the records, were not discovered.

These parties were strangers to one another, deal-

8

ing at arm's length. There was no disparity in intelli-
gence between them. The trusted employee, the expert
accountant, could not be heard to say that he did not
see what was open, obvious and apparent. Neither can
respondents be heard to say, after having employed an
expert accountant, who examined the books and busi-
ness of appellants and reported to respondents, that
the representations as to the profits of the business, if
made, were false; nor that the representations, if made,
induced respondents to make the purchase; nor that
respondents relied upon such misrepresentations in
making the purchase and not upon the result of their
independent investigations.

This case is clearly governed by our decisions in
*Wilson v. Mills,* 91 Wash. 71, 157 Pac. 467; *Sims v.
Robinson,* 142 Wash. 555, 253 Pac. 788; and *Forsyth
v. Davis,* 152 Wash. 595, 278 Pac. 676. Compare *Biel
v. Tolsma,* 94 Wash. 104, 161 Pac. 1047, and *Williams
v. Moore,* 103 Wash. 560, 175 Pac. 172.

Respondents were not entitled to recover on their
cause of action. On their cross-complaint, appellants
are obviously entitled to judgment on the three unpaid
notes of $1,500 each, as adjudged by the trial court,
but they are also entitled to the interest on the notes
as specified therein and reasonable attorney's fees.

In this connection, appellants call attention to
the case of *Farmers & Merchants Bank v. Eagon,* 122
Wash. 586,. 211 Pac. 278. In that case the amount of
attorney's fees had been admitted as reasonable, while
in this case there is no such admission and the trial
court made no finding as to the reasonableness of any
attorney's fees. The cited case is not apt here.

Reversed and remanded, with instructions to pro-
ceed in accordance herewith.

TOLMAN, C. J., MITCHELL, MILLARD, and PARKER, JJ.,
concur.