[No. 25005.   Department One.   August 10, 1934.]

C. W. Vail *et al., Appellants,* v. Robert Bailey *et al., Respondents.*[1]

*McEwen & Brooks,* for appellants.

*P. D. Smith,* for respondents.

Steinert, J.—This action was brought by appellants herein to recover damages for alleged fraud in the sale and purchase, under executory contract, of a telephone system, and further, to enjoin respondents from enforcing a threatened forfeiture of the contract. Respondents denied the allegations of fraud, and by cross-complaint sought to have the contract forfeited for failure to make the agreed payments. Trial before the court resulted in a decree adjudging that ap-

[1] Reported in 35 P. (2d) 37.

pellants take nothing by their action, and that the contract be forfeited and cancelled. From that decree, this appeal was taken.

The assignments of error raise but one question, namely, whether the court correctly disposed of the two issues involved in the case.

On and prior to May 29, 1931, the respondents were the owners of the entire capital stock of Methow Valley Telephone Company, operating in and around Winthrop and Twisp in this state. Appellants, then residents of Portland, Oregon, had been engaged in, or connected with, various telephone enterprises in Washington and Oregon for a number of years. In May, 1931, they made a trip to Okanogan county with the view of locating and purchasing a desirable telephone business. In response to their inquiry, they were directed to the office of the respondents, where they introduced themselves to Mr. Bailey. On being advised of the object of their visit, Mr. Bailey stated that he did not care to sell the business which he was then operating, but that he would consider a proposition if he could double his money. Respondents had purchased the entire capital stock of the Methow Valley Telephone Company about a year and a half prior to that time for seven thousand dollars.

After some discussion relative to the condition of the business, the appellants made a trip of inspection over the territory of respondents' lines to determine the condition of the telephone equipment. Being favorably impressed, they returned in the afternoon, and then had a conference of some length with Mr. Bailey looking toward a purchase by appellants. It was in this discussion that the alleged misrepresentations, which will be referred to later, were made. At the same time, appellants were given full access to the books of the company, which they examined and from

which they made such notes as they desired. As a result of the conference, the parties, on the same day, entered into a preliminary written agreement, under which appellants were given an option to purchase the entire capital stock of the company and all the property used in connection with the operation of the business for fourteen thousand dollars, to be paid in specified installments. At the conclusion of these negotiations, appellants left for their home in Portland.

In order to finance the proposed deal, which called for the payment of forty-nine hundred dollars on or before August 1, 1931, it was necessary for appellants to secure the loan of a substantial sum of money. To promote favorable consideration by the prospective lender, appellants prepared, and had Mr. Bailey sign, a written statement on June 3, 1931, setting forth in detail the approximate revenues of the company and their sources. This statement, it is claimed by appellants, was, in effect, a repetition of Mr. Bailey's original misrepresentations. The statement was signed by Mr. Bailey at Portland, whither he had gone to consult appellants with reference to the pending negotiations.

In the latter part of June, 1931, Mr. Vail, Sr., accompanied by Mr. Wade H. Dean, of White Salmon, Washington, made a second trip to Okanogan county, where the two men saw the respondents and inspected their plant. Mr. Dean was an experienced telephone man, and appellants evidently desired to have his judgment as to the value of the system that they were intending to buy. It was also from him that appellants expected to, and ultimately did, secure their loan. According to appellants' evidence, Mr. Bailey reiterated to Mr. Dean his former statements as to what the revenues of the company had been.

Shortly after this trip, the parties to this action concluded their negotiations by entering into a contract for the sale and purchase of the capital stock of the telephone company owned by respondents and the equipment used in the operation of the business. The contract as thus made called for a total purchase price of $14,077, of which $5,277 was paid at the time, $3,100 was to be paid in monthly installments of $100, with interest, beginning August 15, 1931, and a final payment of $5,700 was to be made on or before December 31, 1932. Appellants thereupon went into possession of the plant and business, and thereafter continued to make the monthly payments on the contract from August, 1931, to August, 1932.

In April or May of 1932, appellants discovered that the earnings of the company were not measuring up to their expectations, whereupon they complained to respondents that they had been deceived. There is some evidence in the case that, at about this time, Mr. Dean was threatening to sue both appellants and respondents because of alleged misrepresentations made to him at the time that he loaned the money to appellants; however, so far as the record shows, no suit was ever instituted by him. It also appears that, between May and September, 1932, appellants were negotiating with a Mr. Tyson for the sale to the latter of the telephone plant here involved. The correspondence between Mr. Vail, Sr., and Mr. Tyson reveals that appellants then considered the property to be worth twenty thousand dollars. There are repeated statements in Mr. Vail's letters to Mr. Tyson to the effect that appellants were offering to sell only because they were negotiating for another plant more suitable for operation by two men.

During the time that appellants were negotiating with Mr. Tyson, they obtained from respondents an

agreement, by the terms of which the purchase price in the original contract was reduced by a sum of over fifteen hundred dollars, on condition, however, that the sum of two thousand dollars was to be paid respondents by October 1, 1932, and other sums on specified dates, and on further condition that, if the payments were not so made, the contract should revert to its original terms. Although the negotiations between appellants and Mr. Tyson culminated in the execution of a contract between them, Mr. Tyson subsequently declined to go through with it, and that deal fell through about the first of August, 1932. This action against respondents was instituted immediately thereafter.

Reverting now to the misrepresentations alleged to have been made by respondents, appellants averred in their complaint and testified at the trial that respondents, through Mr. Bailey, had told them on May 29, 1931, upon the occasion of their first visit, that the revenues from the operation of the telephone system the preceding year had been $8,400, or $700 per month; that such revenues included $445 per month from two hundred paying stations, $100 per month for long distance calls over the system, and $100 per month for long distance calls beyond their line; also that the equipment included one hundred miles of pole lines and three hundred miles of wire.

We need not spend any time upon the alleged misrepresentations regarding the number of poles and the amount of wire, because the evidence shows that, before the option under the preliminary agreement was taken up and the final contract executed, appellants discovered the approximate shortage, and to square the difference respondents agreed to, and did, put in some other property. The main dispute arises over the matter of gross income. The respondents emphat-

ically denied, both in their pleadings and in their evidence, that they had made any of the statements attributed to them, or any statement in those respects other than as were fully corroborated by the books and such other documents as were supplied to appellants at the time of the original negotiations and prior to the final contract.

It is not necessary, nor will it serve any good purpose, to detail the evidence upon this issue. Suffice it to say that all of the evidence as to what occurred on May 29th was from the lips of interested witnesses, and is in direct conflict; further, that, while Mr. Dean corroborated appellants as to what was said on the occasion of the second visit when he was present, it appears, also, that Mr. Dean was vitally interested in the litigation, as he frankly admitted in his testimony. He not only had advanced the loan with which appellants' initial payment was made, but he was also the owner of eleven of the thirty-two shares of stock of the telephone company.

The testimony of the opposing parties upon the issue of fraud was so nearly balanced that it may be said to have produced an equipoise, unless greater credibility is given to the evidence of one side than to that of the other. As to the written statement signed by Mr. Bailey in Portland on June 3, 1931, Mr. Bailey testified that he called Mr. Vail's attention to the discrepancies, but that his remonstrances were brushed aside. The trial court was of the opinion that the statement was obtained from Mr. Bailey not for the purpose of assuring Mr. Vail, but rather for the purpose of effecting a loan, and that, if there was anything of a fraudulent nature connected therewith, it was something in which appellants themselves deliberately participated.

It is the settled rule in this state that fraud is never presumed, but must be proved by evidence that

is clear, cogent and convincing. *Hahn v. Brickell*, 135 Wash. 189, 237 Pac. 305; *Davis v. Associated Fruit Co.*, 135 Wash. 614, 238 Pac. 629; *Davis v. Bayne*, 171 Wash. 1, 17 P. (2d) 618. The burden of establishing fraud is upon him who alleges it. *Child v. Idaho Hewer Mines*, 155 Wash. 280, 284 Pac. 80. From the very nature of cases of this kind, the presence of fraud, if any, in a particular case must be gathered from all the facts and circumstances surrounding and composing the transaction. *Bank of Chewelah v. Carter*, 165 Wash. 663, 5 P. (2d) 1029.

The record before us contains the memorandum opinion of the trial judge, which discloses a very careful and exhaustive analysis of the evidence and reveals that, after considering and weighing the matter with scrupulous concern, the court concluded that fraud had not been established. Our reading of the record convinces us that the trial court was right in its conclusion. This disposes of the first issue.

On the matter of forfeiture, a further statement is necessary in order to present the legal question here involved. As already indicated, the appellants sought not only to recover damages for fraud and to have such damages offset against the amount owing on the contract, but also to enjoin a threatened forfeiture of the contract. This action was begun October 6, 1932. Shortly thereafter, respondents served upon appellants notice of forfeiture for failure to make the payments accruing to September, 1932. Their answer contained a cross-complaint asking that the contract be decreed forfeited and cancelled. The reply made no denial of the grounds of forfeiture except as affected by the claim for damages.

Although it appears that, subsequent to the notice of forfeiture, appellants paid, and respondents received, the sum of $174.65 on the contract, yet appel-

lants raised no issue of waiver of forfeiture on that ground. That question appears to have been brought forward for the first time by the court itself in its memorandum opinion. After disposing of the issue of fraud, the court suggested that appellants might interpose a motion for a new trial if they desired to be heard on the question of forfeiture. The appellants then made such motion, but did not advance any reason why forfeiture should not be allowed, except the fact that a payment of $174.65 had been made subsequent to the notice. It is to be borne in mind that, at the time that this payment was made, there was due and owing by appellants the sum of two thousand dollars, and at the time of trial all installments under the contract, amounting to over six thousand dollars, had matured. In ruling on the motion for new trial, the court referred to the fact that no issue had been raised by appellants as to the right of forfeiture, except as it was affected by the claim for damages, and further, that appellants were making no offer to do equity in return for denial of strict forfeiture.

The only inference that can reasonably be drawn from appellants' attitude and actions up to the time that the court ruled on the motion for new trial is that they did not intend to make any further payment on the contract. They have at no time offered to do anything that would entitle them to the equitable interposition of the court. In view of the issues that were presented to the court, the theory upon which the case was tried, and the unconcern of appellants regarding the delinquent installments, it seems to us that it would now be an unwarranted and futile exercise of judicial discretion to withhold forfeiture merely because a relatively small payment had been made on the contract after notice of forfeiture was given.

While a forfeiture may be waived by the party entitled thereto, the intent to waive such forfeiture must be clear and unequivocal. *Surry v. Baker,* 132 Wash. 188, 231 Pac. 791; *Manson v. Foltz,* 170 Wash. 652, 17 P. (2d) 616. It seems obvious to us, from what has already been said, that neither party had any thought that the acceptance of partial payment was to be considered as an absolute waiver of forfeiture. Respondents have at all times insisted upon forfeiture, and appellants have not resisted it, except through their claim for damages. The court gave appellants adequate opportunity to protect themselves against loss by forfeiture, but appellants evidently did not care to avail themselves of it, and declined to make any offer to do equity. No question of waiver of forfeiture having been presented by the issues, and none having been raised during the trial, when it might have been counteracted by evidence, the court was right in refusing to make it the basis for a new trial.

The decree is affirmed.

BEALS, C. J., MAIN, MITCHELL, and MILLARD, JJ., concur.